### First National Bank of Cuero v. San Antonio & Aransas Pass Railway Company et al.

No. 1257.   Decided December 17, 1903.

**1.—Jury—Challenges—Hostile Defendants.**

Defendants between whom there is a controversy are each entitled to six peremptory challenges, though they consult and act together in exercising the right.   (Pp. 212, 213.)

**2.—Harmless Error—Distinct Defenses.**

Where the jury, under instructions on distinct defenses, one submitting the question whether plaintiff had been given a lien on certain cotton by the owner, and the other whether he had waived his lien by consenting to a sale by such owner, found for defendant on the latter issue without expressly passing on the former, errors in the charge submitting the question whether a lien was given became immaterial.   (Pp. 213, 214.)

**3.—Damages—Proof of Value.**

A railway which converted cotton by refusing delivery without surrender of the bill of lading giving the right in the holder to demand it, could not defeat recovery on the ground that there was no proof of the value of the particular bales in question,—a few out of a large number whose aggregate value was proved; being in possession of defendant and never having been in possession of plaintiff, the latter could recover on the basis of the average price of the lot per bale, unless those in question were shown to be of less value.   (Pp. 214, 215.)

**4.—Lien—Sale by Consent of Lienholder.**

The holder of a lien on cotton who consented to its sale by the owner and received the price it brought, had no claim by virtue of his lien to anything but such proceeds.   (P. 215.)

**5.—Nominal Damages—Practice in Supreme Court.**

Where it is sought to reverse a judgment for defendant on the ground that plaintiff was entitled to at least nominal damages, the point should be made in the Court of Civil Appeals, by brief and on motion for rehearing, in order to be available in the Supreme Court.   (P. 215.)

**6.—Practice on Appeal—Affirmance in Part.**

In a suit for conversion of personal property on which plaintiff claimed a lien, a judgment for defendant may be affirmed as to a part of the claim, as to which no error appears—property sold by consent of the lienholder—and reversed and remanded as to the rest of plaintiff's claim—for that which was not so sold.   (Pp. 215, 216.)

Error to the Court of Civil Appeals for the First District, in an appeal from De Witt County.

The bank obtained writ of error upon the affirmance, on its appeal, of a judgment for the defendant in its suit against the railway company, which had impleaded the compress company and Koenig & Van Hoogenhuyze.

*Lackey & Lewright* and *Dabney & Lockett,* for plaintiff in error.— Where there is an identity of interest against the plaintiff and a combination of action by the defendants and in striking their lists, they are entitled to no more than six peremptory challenges. Rev. Stats., art. 3212; Waggoner v. Dodson, 68 S. W. Rep., 813; Jones v. Ford, 60 Texas, 130; Bruce v. Bank, 25 Texas Civ. App., 295; Hall v. Dry Goods Co., 55 S. W. Rep., 751, 23 Texas Civ. App., 149; Baum v. Sanger, 49 S. W. Rep., 650; Hargrave v. Vaughn, 82 Texas, 349; Kelley-Goodfellow Shoe Co. v. Insurance Co., 28 S. W. Rep., 1029.

Even though the compress company and Koenig & Van Hoogenhuyze be not considered sham defendants and their pleadings be considered to indicate adverse interests between themselves and against the plaintiff and railway company, yet when they persisted in striking their lists together, and with the railway, they and the railway abandoned their right to more than six challenges in all. Texas M. L. Ins. Co. v. Brown, 2 Posey, U. C., 161.

The negotiability, or seminegotiability of bills of lading, to shipper's order, does not cease, and the bills as merchantile paper are not dead when they reach the hands of persons directed to be notified in the bills and are paid for by them, but they remain negotiable by such persons, nor is the jus desponendi of the original shippers terminated; it passes, as an incident of negotiability, to the holders of the bills. A bill of lading, in the hands of the consignor or person directed to be notified is not commercially dead nor functus officio, but has every function of a bill in the hands of a shipper when and after it is again transferred. Missouri P. Ry. Co. v. Heidenheimer, 82 Texas, 199; Campbell v. Alford, 57 Texas, 162; Adoue v. Seeligson, 54 Texas, 603; Freeman v. Bank, 3 Willson, 340; Northern P. Ry. Co. v. Bank, 123 U. S., 727; Conard v. Atlantic Ins. Co., 1 Peters, 445; The Thames, 14 Wall., 98; Daniel, Neg. Inst., middle of sec. 1730, sec. 1731a (ed. 1886); 2 Kent's Com., marginal p. 549; 5 Am. and Eng. Enc. of Law, new ed., 205; Union P. Ry. Co. v. Johnson, 45 Neb., 57, 5 Am. St. Rep., 540; Ratzer v. Railway 64 Minn., 245, 58 Am. St. Rep., 530; Midland Nat. Bank v. Railway Co., 132 Mo., 492, 53 Am. St. Rep., 505; Turner v. Israel, 64 Ark., 244; Hieskell v. Bank (89 Pa., 155), 33 Am. Rep., 745.

The notation on the bills "notify Koenig & Van Hoogenhuyze" did not affect or diminish their negotiability, but was a plain statement that the cotton was not to be delivered to Koenig & Van Hoogenhuyze or their order, without the production of the bills. North P. Ry. Co. v. Bank, 123 U. S., 727; 5 Am. and Eng. Enc. of Law, new ed., 205.

If it be a fact that the proceeds of the sale of the cotton covered by

the bills sued on were paid to plaintiff, they were paid to it without its knowledge of the fact that they were derived from the sale of this cotton, and there being a balance due on account, the payment under these circumstances could constitute no possible defense, plaintiff having released other cotton.

A bailee or wrongdoer through whose negligence the property of another has been destroyed or converted, can not, in mitigation of damages, be credited with the value of the property paid or returned to the owner or for his account and benefit, without his knowledge and consent to receive the proceeds as coming from this particular property in compensation, unless the return has been made by judicial process, or unless the defendant has not acted negligently, but merely irregularly and in the line of his duty. Especially is this principle enforced:

(a) When the payment of the proceeds is made to the owner by a third person in pursuance of a contract of payment under which he is personally liable and by which he is bound, and when such a payment is taken on account merely, and not to release the pledge or claim for property destroyed or converted and not procured by the bailee. It will be applied as made in pursuance of plaintiff's contract of payment and on the third person's general liability thereunder—res inter alios acta as to the wrongdoer—and not in mitigation of the damages arising from the conversion.

(b) When through the conversion or wrong the owner or pledgee has been induced to rest upon his rights, the possibilities and contingencies of a prompt collection which might have been made but for the deception, not being a subject of practical judicial inquiry, are presumed, against the wrongdoer, to have been of value to the pledgee.

On general propositions: 2 Greenl. on Ev., secs. 276, 635a and note 3, especially end of note p. 620 (14th ed.) ; 3 Suth. on Dam., 531-533; 2 Suth. on Dam., 242, 243 (ed. of 1884) ; 4 Am. and Eng. Enc. of Law, 126, near bottom of first column of notes (1st ed.). On application of the principles under circumstances mentioned in head (a) : Texas & Pac. Ry. Co. v. Levi, 59 Texas, 674; Missouri K. & T. Ry. Co. v. Rains, 40 S. W. Rep., 636; Weaver v. Ashcroft, 50 Texas, 445; Frank v. Tatum, 26 S. W. Rep., 903; Field v. Munster, 11 Texas Civ. App., 341; Moore v. Graham, 29 Texas Civ. App., 235; Munster v. Field, 89 Texas, 102; Mathews v. Railway Co., 121 Mo., 299; Matthews v. Railway Co., 142 Mo., 645. On application of the principle under circumstances mentioned in head (b) : Weinstein v. Bank, 69 Texas, 38; First Nat. Bank of S. A. v. National Bank, 92 Texas, 440; Pomeroy's Eq. Jur., last part of sec. 812.

The railway company having privately delivered the cotton without calling for the bills, and violated its duty upon which plaintiff relied and induced a change of situation and caused plaintiff to abandon all claim against the local cotton and to rest upon its rights, can not make the defense that the proceeds of the bill of lading cotton were paid to

plaintiff. "It is enough if the party has been induced to refrain from using such means or taking such actions as lay in his power, by which he might have retrieved his position and saved himself from loss, or might possibly by legal proceedings or moral suasion protected itself against loss.'" It is entirely immaterial whether or not plaintiff had any right against the local cotton, or was deprived of any other right except to press for its debt before Koenig & Van Hoogenhuyze went into bankruptcy. First Nat. Bank of S. A. v. National Bank, 92 Texas, 440; Weinstein v. Bank, 69 Texas, 42; Schwarz v. National Bank, 67 Texas, 219; Leather Manufacturers' Nat. Bank v. Morgan, 117 U. S., 96; Pomeroy's Eq. Jur., sec. 812.

No burden is upon the plaintiff to show by evidence that it could have collected had it known of the conversion of the bill of lading cotton. First Nat. Bank of S. A. v. National Bank, 92 Texas, 440; Leather M. Nat. Bank v. Morgan, 117 U. S., 96.

Were it material to inquire into rights of plaintiff against the local cotton, the railroad could not avail itself of any irregularity or legal incompleteness in fixing those rights. Bell v. Beazley, 18 Texas Civ. App., 639; Gulf C. & S. F. Ry. Co. v. Settegast, 79 Texas, 256.

Neither a previous course of dealing, nor custom, nor a previous permission by the holders of bills of lading to deliver without the production of the bills, can justify a subsequent delivery to the person directed in the bills to be notified without the production of the bills sued on, since the holder has the right at any time to insist upon the very contract expressed by the bills, which can not be modified by custom, and since the term "notify Koenig & Van Hoogenhuyze" is a positive direction not to deliver to them, the bill expressing the whole contract. North. P. Ry. Co. v. Bank, 127 U. S., 727; Brittain v. Barnaby, 21 How., 538; The Delaware, 14 Wall., 606; 9 Am. St. Rep., note, p. 513; 5 Am. and Eng. Enc. of Law, new ed., 205; Boon v. Steamboat Belfast, 40 Ala., 184, 88 Am. Dec., 763.

It is not permissible to inquire at whose request or for whose convenience the bills were drawn to shippers' order or to prove that at their request it was noted on the foot of each bill that the cotton was to be compressed in Cuero. The bills can not, in plaintiff's hands, be modified or explained by parol or by an inquiry into the intention of the shippers. As a contract to carry and deliver, bills of lading can not be contradicted by parol, but only as a receipt; but in this case there is no controversy over the bills as receipts. Arnold v. Jones, 26 Texas, 337; The Lady Franklin, 8 Wall., 329; McElveen v. Southern Ry. Co., 109 Ga., 249, 77 Am. St. Rep., 375, 376; 4 Am. and Eng. Enc. of Law, new ed., 536, 537.

This principle is not limited to controversies between the original parties to the bills, but applies in favor of strangers to the original contract to whom the bills have been transferred. 4 Am. and Eng. Enc. of Law, new ed., 543.

It appears from the face of the bills that the cotton was not to be

delivered to the compress, but to be compressed under the charge of the railway, or in any event to be delivered to the shippers' order.

It is a negligent delivery to deliver the cotton to anyone not the holder of the bills to shippers' order, and unless the bills of lading were concurrently turned in, or at least called for and marked so as to show delivery, should the holder desire to retain the bill in order to adjust charges, or claims.  5 Am. and Eng. Enc. of Law, new ed., 200, 201.

Although Koenig & Van Hoogenhuyze may have fraudulently sold the cotton to some other person, plaintiff not having notice of the fact that the cotton had been sold, the negotiability of the bills was not affected.  Ratzer v. Railway Co., 64 Minn., 245 (58 Am. St. Rep., 531, 532, 533) ; Midland Nat. Bank v. Railway Co., 132 Mo., 492 (53 Am. St. Rep., 509) ; Union Pacific Ry. Co. v. Johnson, 45 Neb., 57, 50 Am. St. Rep., 545.

*Proctors,* for defendant in error San Antonio & Aransas Pass Railway Company.—There can be no reversal of a case for errors committed against one who it is apparent is not entitled to succeed in his cause of action in any event.  Davis v. Houston E. & W. T. Ry. Co., 29 Texas Civ. App., 42; Hardin v. Jones, 29 Texas Civ. App., 350; Rahl v. Parlin & Orendorff Co., 27 Texas Civ. App., 72; Stringfellow v. Montgomery, 57 Texas, 352; Galveston & W. Ry. Co. v. City of Galveston, 90 Texas, 399; Laughter v. Laughter, 21 Texas Civ. App., 414; King v. Hapgood Shoe Co., 21 Texas Civ. App., 217; Ellis v. Mills, 28 Texas, 584; Bohanan v. Hans, 26 Texas, 445; Radam v. Capitol Microbe Des. Co., 81 Texas, 122; Lowney v. Linney, 21 S. W. Rep., 409; Lovering v. McKinney, 7 Texas, 521; 3 Am. and Eng. Enc. of Law, 385; 3 Century Digest, sec. 4035, sub. 6, and authorities cited.

Koenig & Van Hoogenhuyze having express authority from appellant bank to find a purchaser, fix the price, designate the particular cotton which was to constitute the subject matter of the sale, and Inman & Reed having accepted such proposition to sell, and the cotton having been fully identified and designated, a complete sale was effected as between the bank and Koenig & Van Hoogenhuyze on the one hand and Inman & Reed on the other, and the latter firm acquired eo instanti title to said cotton and the right to demand both from Koenig & Van Hoogenhuyze and this bank the delivery of said cotton; and whether delivery of the cotton was actually made with the bank's consent or not is entirely immaterial, as there was a complete sale of the cotton binding upon the bank.  Irvin v. Edwards, 92 Texas, 258; Downey v. Taylor, 48 S. W. Rep., 541; Cleveland v. Williams, 29 Texas, 204; Owens v. Clark, 78 Texas, 547; Sanger v. Thomason, 44 S. W. Rep., 409; Eppstein v. Drug Co., 82 Texas, 572; Brewer v. Blanton, 66 Texas, 532; Smith v. Whitfield, 67 Texas, 126; Goldberg v. Bussey, 47 S. W. Rep., 51; Hopkins v. Partridge, 71 Texas, 608; Loeb v. Crow, 15 Texas Civ. App., 537; Baker v. Guinn, 32 S. W. Rep., 370.

Not only by virtue of this complete sale did Inman & Reed acquire

title to the cotton and right to demand the delivery of the same on the part of Koenig & Van Hoogenhuyze and the bank, but they further had. the right, since the cotton was in possession of the railway company, to the possession of these bills of lading held by the bank covering this cotton so sold, if said bills were in anywise essential to their title or necessary in order to secure possession of the cotton; for it is a familiar principle of sales that the buyer having right to possession of the thing bought, if said possession is not in the seller but in some third person as bailee, the seller must use every effort to put the buyer in possession, and must furnish him all evidences of title or claim on the seller's part to the thing sold, in order that the third party bailee may recognize the buyer's right to possession of the article sold; therefore it may be truly said that from the instant of said sale Inman & Reed not only owned the cotton in the possession of the railroad company, but also really owned the bills of lading covering the cotton in the possession of the bank.

Koenig & Van Hoogenhuyze occupying the dual status not only of customers of the bank but also of agents of the bank, so far as the sale of cotton is concerned to which the bank held bills of lading, even if they exceeded their authority in completely effecting said sale, nevertheless the bank ratified said authority by retaining the proceeds of said sale after·it acquired knowledge of the facts, for ratification of the unauthorized act of an agent may be as well produced by retaining the proceeds with complete knowledge of the agent's act, as by accepting proceeds with knowledge of the agent's act.    American Nat. Bank v. Cruger, 91 Texas, 446; Swayne v. Union Mutual Life Ins. Co., 49 S. W. Rep., 518; Henderson v. Railway Co., 17 Texas, 576; Anderson v. Walker, 49 S. W. Rep., 937; Pioneer Savings and Loan Co. v. Bauman, 58 S. W. Rep., 49; Wells Fargo v. Simpson Nat. Bank, 19 Texas Civ. App., 636; Merchants Bank v. McAnulty, 31 S. W. Rep., 1093; Martin v. Rotan Groc. Co., 66 S. W. Rep., 212; Bank of Hico v. Hamilton Bank, 17 Texas Civ. App., 555.

Even if this bank did receive the proceeds of this cotton in ignorance of the source from which it was derived, nevertheless the bank can not retain the proceeds of said sale after it did acquire knowledge of the fact and deny the sale, or in other words, the bank can not keep Inman & Reed's money and deny that Inman & Reed acquired title to the cotton by virtue of the sale made by Koenig & Van Hoogenhuyze, and could only have escaped the recognition of Inman & Reed's title by promptly disavowing the sale and returning the purchase money.    Myers Drug Co. v. Tucker, 34 S. W. Rep., 786; First Nat. Bank of Hico v. Hamilton Nat. Bank, 17 Texas Civ. App., 555; Swayne v. Union Mutual Life Ins. Co., 49 S. W. Rep., 518; Meyer v. Smith, 3 Texas Civ. App., 37.

A substantial difference exists, which has been entirely overlooked by appellant's counsel, between the unauthorized act of an agent and an unauthorized act of a stranger.    In the former case the principal ratifies the agent's entire act if he retains the fruits of the agent's act,

whereas in the latter case he does not necessarily ratify unless he had full prior knowledge at the time of the acceptance of the benefits of the act of the stranger, though of course there may be subsequent implied ratification even of the acts of a stranger. American Nat. Bank v. Cruger, 91 Texas, 446; Fort Worth Pub. Co. v. Hitson, 80 Texas, 228; McCollum v. Wood, 33 S. W. Rep., 1087; Larkin v. Wilsford, 29 S. W. Rep., 548.

The ratification by the retention of the proceeds is necessarily ratification of the entire sale, as the bank must ratify in toto; it can not partially ratify. Meyer v. Smith, 3 Texas Civ. App., 31; Williams v. Chambers, 26 S. W. Rep., 273; Houston & T. C. Ry. Co. v. Wright, 38 S. W. Rep., 836; Mechem on Agency, sec. 130.

This cotton having been sold by the shippers, Moore and others, to Koenig v. Van Hoogenhuyze, and the purchase money being unpaid, and the bills of lading being drawn to shipper's order, notify Koenig & Van Hoogenhuyze, and attached to drafts drawn by the shippers upon said buyer for purchase money and sent through banks for collection, these collecting banks became the seller's agents, not only to present and collect the drafts but also to terminate the jus disponendi reserved by the shippers, and a delivery of the drafts with the bills of lading attached to Koenig & Van Hoogenhuyze amounted to a constructive delivery of the cotton itself to said firm. After such delivery the ownership of the cotton did not exist by virtue of possession of the bills of lading; but the bills of lading having come home to the purchaser, all such ownership was merged into the ownership of the cotton itself. The bills of lading as mercantile paper had fulfilled their every purpose and their quasi negotiability ceased. No subsequent possessor of said bills had any ownership derived from the vendor or shipper of the cotton, for all such ownership had become merged into the title of the purchaser. Necessarily therefore the only rights of any subsequent possessor of said bills of lading were those acquired from the purchaser, and this bank had no rights whatever in said cotton unless said right was acquired from Koenig & Van Hoogenhuyze. The bills of lading were functus officio and absolutely dead so far as carrying any title of the shipper, or original vendor is concerned. That when the collecting bank accepted the purchaser's check for the draft, and delivered the bill of lading, the purchaser became eo instanti owner of the cotton and entitled to its delivery. Liefert v. Galveston H. & L. Ry. Co., 57 S. W. Rep., 899. That the bill of lading is dead as any reservation of title in the shipper after the shipper's draft reaches the purchaser and is paid by the latter, and that its subsequent transfer does not carry the title to the shipper, and even the delivery of the bill is a mere formality. Witt v. East Tenn. & W. N. C. Ry. Co., 99 Tenn., 442. That a general rule is that the transferee of a bill of lading only gets the title of his transferer. 3 Am. St. Rep., 200; 4 Am. and Eng. Enc. of Law, new ed., 546-549.

While the indorsement of bills of lading is not essential to a transfer of the same, which may be by delivery alone, yet such indorsement

is evidence of an intent to transfer title to the goods, and the absence of such indorsement is evidence of a contrary intent, though such evidence is of course rebuttable. Chandler v. Sprague, 38 Am. Dec., 420.

While an indorsement of the bill of lading is not essential to a valid transfer or pledge of the goods, which might arise by virtue of the delivery of the bills of lading, though unindorsed, yet an intent on the part of the transferer to so pass title to the goods themselves, or pledge of the goods themselves, is an absolute prerequisite to passage of any title whatsoever to one claiming to be a transferee or pledgee of the goods from mere possession of the bills of lading. Note to Chandler v. Sprague, 38 Am. Dec., 420; 4 Am. and Eng. Enc. of Law, new ed., 547.

The only intent which could have existed in the delivery of these bills of lading to the bank was the intent consistent with the agreement between Koenig & Van Hoogenhuyze, i. e., that Koenig & Van Hoogenhuyze were to have a right to sell the cotton and to receive the purchase money therefor, and necessarily the right to deliver the article sold to the purchaser, and therefore the delivery of the bills of lading was merely to evidence Koenig & Van Hoogenhuyze's trust created by the agreement, namely, to account to the bank for the purchase money when the cotton was sold.

Appellant bank had no right to take Inman & Reed's money and apply same generally upon Koenig & Van Hoogenhuyze's indebtedness and deny Inman & Reed's title to the cotton the sale of which produced said fund so applied, because where the rights of third parties intervene equity requires that application of the payment be made so as to protect the rights of the third parties. Howard v. Schwarz, 22 Texas Civ. App., 400; First Nat. Bank of Hico v. Hamilton Nat. Bank, 17 Texas Civ. App., 555.

Unless Koenig & Van Hoogenhuyze had sold this cotton to Inman & Reed, and unless the cotton was Inman & Reed's, then the money was not Koenig & Van Hoogenhuyze's, but Inman & Reed's, and Koenig & Van Hoogenhuyze held same as constructive trustee for Inman & Reed. If so, then this bank, even though ignorant of Koenig & Van Hoogenhuyze's status, and even though believing the money to be Koenig & Van Hoogenhuyze's, could only retain this money in one contingency, and that is only to the extent of advances made on the faith of such deposit. They could not retain it on the strength of any prior indebtedness of Koenig & Van Hoogenhuyze to the bank. Commercial Bank v. Jones, 18 Texas, 820; Wilson v. Smith, 3 How., 763; United States v. Bank, 96 U. S., 35; Bury v. Woods, 17 Mo. App., 252; Carroll v. Exchange Bank, 30 W. Va., 528; Jones v. Milliken, 41 Pa. St., 255.

The bills of lading really belonging to Inman & Reed, and not appellant, at the time of such delivery, their production was a mere ceremony.

Appellant by its prior authorization of its agents, Koenig & Van Hoogenhuyze, to sell this cotton, as also by reason of its subsequent retention of the fruits of its agents' acts, was a party to the sale to Inman

& Reed, and was under obligation to Inman & Reed to deliver this cotton, and it can not make appellee liable for doing that very thing which appellant was under obligation to do, namely, to deliver the cotton to Inman & Reed.

The paramount duty of the carrier is, of course, to deliver the goods to the person who owns them.   Ordinarily the carrier is safe in delivering the goods to the holder of the bills of lading, but if an issue is raised between one shown to be the true owner of the goods and one shown to be the mere holder of the bill of lading, it is the duty of the carrier to deliver to the former.  · When a carrier delivers without production of the bill of lading, it takes two risks only:  First, that the party to whom it delivered is not the true owner of the goods; second, that the holder of the bill of lading, whoever he may be, has no valid lien or claim upon the goods delivered.   The carrier does not by delivery to the true owner guarantee that one who is in mere possession of the bills of lading will be paid a debt owed him by a third party, which debt was a claim upon property entirely distinct from that property which was delivered by the carrier.

The ´overwhelming weight of Texas authority is, that if among codefendants the issues and interests are adverse, each defendant so in hostility to the others is entitled to six peremptory challenges, even though necessarily all defendants are making common fight against their common enemy, the plaintiff.   Rev. Stats., art. 3212; Hargrave v. Vaughn, 82 Texas, 347; Rogers v. Armstrong Co., 30 S. W. Rep., 848; Bruce v. Bank, 25 Texas Civ. App., 295; Baum v. Sanger, 49 S. W. Rep., 650; Kelley-Goodfellow S. Co. v. Liberty I. Co., 28 S. W. Rep., 1027; Railway Co. v. Stell, 61 S. W. Rep., 980; Waggoner v. Dodson, 96 Texas, 6.

The jury having found for appellee under the first fact issue submitted by .the court, and having therefore found that the cotton had been sold by Koenig & Van Hoogenhuyze to Inman & Reed with authority in the former derived from appellant bank not only to effect said sale but to receive the purchase money arising from the sale of this cotton, appellant could not possibly recover, even if all other issues had been determined in its favor, and therefore errors, if any, committed as to other phases of the case are wholly immaterial.   That delivery to the true owner is complete defense to this suit, and that appellee can assert title of true owner.   International & G. N. Ry. Co. v. Ogburn, 63· S. W. Rep., 1072; Wolfe v. Mo. Pac. Ry. Co., 11 S. W. Rep., 49.

*A. B. Davidson,* for Cuero Cotton Compress Company, defendant in error.

*Kleberg, Grimes & Baker,* for Koenig & Van Hoogenhuyze, defendants in error.

97 Supreme—14.

GAINES, CHIEF JUSTICE.—This is a writ of error to a judgment of the Court of Civil Appeals of the First Supreme Judicial District, which affirmed judgment is in favor of the defendant rendered by the District Court of De Witt County in a suit brought by plaintiff in error against the defendant in error, the San Antonio & Aransas Pass Railroad Company.

We can not give a better statement of the case than that made by the Chief Justice of the Court of Civil Appeals in the opinion delivered by that court on the appeal. It is as follows:

"This action was brought by the First National Bank of Cuero against the San Antonio & Aransas Pass Railway Company for the conversion of 222 bales of cotton. The appellant alleged that it held the bills of lading for the cotton and that the appellee had refused upon demand to deliver the same. It sought to recover the value of the cotton as the owner thereof upon the liability of the appellee in the alternative as common carrier and as warehouseman. It also alleged, that, if it were not the absolute owner of the cotton, nevertheless said bills of lading were pledged to it to secure an indebtedness of $6241.86 owed to it by the firm of Koenig & Van Hoogenhuyze. Appellee made the members of the firm of Koenig & Van Hoogenhuyze and the Cuero Cotton Compress Company parties defendant and prayed judgment over against each of them. There was a trial by jury. After the evidence was all in the appellee took a nonsuit as to the Cuero Cotton Compress Company. The case was then submitted to the jury, and resulted in a verdict and judgment in favor of the appellee.

"At the beginning of the cotton season of the year 1899 the appellant bank and the firm of Koenig & Van Hoogenhuyze entered into an arrangement by which the appellant agreed to advance Koenig & Van Hoogenhuyze money for the purpose of buying cotton, both locally at Cuero and also at different points on the San Antonio & Aransas Pass Railway west of Cuero. As security for the money to be advanced by the appellant, Koenig & Van Hoogenhuyze deposited with them as a margin six shares of the stock of the Cuero Compress Company and agreed that the appellant should have a lien on the local cotton purchased by them, and that they would turn into the bank the bills of lading for the cotton shipped in by railroad. The stock was deposited as agreed and the course of dealing in carrying out the agreement for the advancement of the money by the bank to pay for the cotton purchased by Koenig & Van Hoogenhuyze was that the cotton bought in Cuero was paid for by the bank upon checks drawn against it by Koenig & Van Hoogenhuyze and was sold by them and the proceeds were deposited by them to their account with the bank. And cotton bought by Koenig & Van Hoogenhuyze at points on the railroad was shipped to Cuero on bills of lading to order of the sellers, with directions to notify the buyers, and the bills of lading were attached to drafts of the sellers on Koenig & Van Hoogenhuyze for the price of the cotton, and the drafts with the bills of lading attached were sent to the bank at Cuero for

collection.  On presentation of the drafts and bills of lading to Koenig & Van Hoogenhuyze they paid them with their checks on the appellant bank, which were accepted as cash by the collecting banks and the drafts and bills of lading were delivered to them.  The checks of Koenig & Van Hoogenhuyze were charged by the appellant to their account and they turned in the bills of lading to the bank.  The checks were paid on presentation, without waiting for the delivery of the bills of lading, which were afterwards either turned in by Koenig & Van Hoogenhuyze themselves or sent by them to the bank.  The cotton represented by the bills of lading was sold by Koenig & Van Hoogenhuyze without consultation with the officers of the bank, and whenever a sale was effected Koenig & Van Hoogenhuyze would send to the bank for the bills of lading for the cotton sold and the bank would deliver them to Koenig & Van Hoogenhuyze.  The bank did not require the proceeds of a sale to be deposited before giving up the bills of lading, but trusted Koenig & Van Hoogenhuyze to turn them in, which they usually did.  The officers of the bank kept themselves informed as to the condition of the account by noting the daily balances and the number of bales of cotton shown to be on hand by the bills of lading in its possession and the amount of local cotton that appeared to be on hand, which would be ascertained by a casual inspection in riding by the back yard of Koenig & Van Hoogenhuyze's place of business, where it was usually stored. Koenig & Van Hoogenhuyze were also engaged in business as general merchants, and made deposits of money and did their banking business with appellant bank.  Their merchandise and cotton accounts were kept separately, but in some instances credits were transferred from the cotton to the merchandise account, the state of the account and the amount of security on hand appearing to the officers of the bank sufficient to authorize the transfer.

"The account for a balance due upon which this suit is brought began September 1, 1899, but by a deposit on September 2d this balance was reduced to $550.55.  Up to September 27th, when they became bankrupt and the account was closed, the total amount loaned Koenig & Van Hoogenhuyze by the bank, including interest on overdrafts, etc., was $87,934.05.  They had paid to the bank an amount sufficient to reduce the balance to $6241.05, which should be credited with the proceeds of the compress stock, December 22, 1900, $384.

"The several bills of lading, seven in number, upon which suit is based were issued by the railroad company for several lots of cotton, amounting in all to 222 bales, sold to Koenig & Van Hoogenhuyze by parties at Karnes City and Runge stations on the San Antonio & Aransas Pass Railway.  They were issued to the sellers of the cotton as the shippers thereof.  The cotton was to be carried to Cuero and was consigned to shipper's order, notify Koenig & Van Hoogenhuyze, Cuero, Texas, and the bills had noted thereon a memorandum, 'compress in Cuero.'  The sellers of the cotton drew drafts on Koenig & Van Hoogen-

huyze for the price of the cotton and attached to them the bills of lading indorsed in blank and sent them to banks in Cuero other than appellant bank for collection. The several drafts, with the bills of lading attached, were presented to Koenig & Van Hoogenhuyze for payment and were paid by their checks on the appellant bank, which were cashed on presentation and charged to the account of the drawers. The bills of lading and the receipted drafts of the sellers of the cotton on Koenig & Van Hoogenhuyze were delivered to the latter by the collecting bank upon the receipt of their checks on the appellant. The bills of lading were not attached to the checks of Koenig & Van Hoogenhuyze on the bank, but they were afterwards delivered to it and were in its possession when Koenig & Van Hoogenhuyze failed and were produced by it at the trial below. The original receipted drafts remained in the hands of Koenig & Van Hoogenhuyze and never went into the possession of the bank. The purchases of the cotton were made September 19th and 20th, and the cotton was immediately shipped and delivered by the railroad to Cuero Compress Company, September 24th and 25th, except probably three bales, which arrived on September 27th. The drafts for the price of the cotton were paid, as severally presented, on September 20th to September 25th.

"On September 25th Koenig & Van Hoogenhuyze sold to Inman & Reed 146 bales of the cotton which had arrived on the 24th, and on the 26th they sold them 79 bales, making 225 bales in all, but which included three and probably five bales that were not covered by bills of lading sued on. This cotton was all marked in the marks of the several shippers and was capable of identification and is fully identified as the lot covered by the bills of lading in the possession of the appellant, except as to the three bales mentioned. It was delivered by Koenig & Van Hoogenhuyze to Inman & Reed on the cotton platform of the compress and was shipped out of Cuero on the 24th and 26th days of September over the line of another railroad. Of the proceeds of the first sale of 146 bales, amounting to $4398.24, Koenig & Van Hoogenhuyze paid the entire amount to the appellant, and of the proceeds of the second sale they paid the appellant $1979.36. The second sale was for 79 bales of cotton, and amounted to $2468.26. Koenig & Van Hoogenhuyze filed an application in the Federal court of San Antonio for adjudication and discharge as bankrupts on September 27, 1899, and were afterwards discharged."

Our approval of the statement should probably be qualified by the remark that if the court mean by saying that "the bank did not require the proceeds of a sale to be deposited before giving up the bills of lading, but trusted Koenig & Van Hoogenhuyze to turn them in, which they usually did," that the undisputed testimony showed these facts, we are not fully prepared to concur; but deem the matter unimportant for reasons hereinafter given.

In impaneling the jury the defendant railroad company and codefendant, the compress company, and Koenig & Van Hoogenhuyze as a part-

nership, were each allowed six peremptory challenges, over the objection of the plaintiff, and this action is assigned as error. Here, as has been seen from the statement previously made, although the defendants had a common cause as against the plaintiff, there was a controversy between the railroad company and the compress company and also between the former and Koenig & Van Hoogenhuyze. This made the two defendants company and the partnership each a separate party to the suit and under the rule recognized in this court entitled each to six· peremptory challenges. McLaughlin v. Carter, 13 Texas Civ. App., 132. The case does not fall within the rule laid down in Hargrave v. Vaughn, 82 Texas, 350, and in Jones v. Ford, 60 Texas, 127.

But it was further objected to the mode of impaneling the jury, that the defendants were permitted to consult and to act together in exercising their challenges and in striking the objectionable names from the jury lists. The statute does not prohibit such action, and we are of the opinion that the court did not err in allowing it.

Upon the trial the defendant railroad company urged three defenses to the action. First, that since the bills of lading were not delivered to the bank at the time it paid Koenig & Van Hoogenhuyze's checks for the purchase money of the cotton the former had no lien upon the bills or the cotton represented by them; second, that if the bank had a lien it had authorized Koenig & Van Hoogenhuyze to sell the cotton without procuring from them or producing the bills of lading; and third, that, if not authorized to sell, after the attempted sale, Koenig & Van Hoogenhuyze had paid to the bank the money for which the cotton had been sold.

Exceptions were interposed to so much of the answer as asserted the first defense and were overruled in the court. The court also instructed the jury, in effect, that if Koenig & Van Hoogenhuyze paid the drafts of the sellers of the cotton and received the accompanying bills of lading, they became the absolute owners of the cotton; and that if they subsequently delivered the bills of lading to the bank with intention of giving a lien, that the bank was entitled to hold the cotton; but if such was not their intention, then the bank had no lien and the defendants were entitled to a verdict. The Court of Civil Appeals held·that there was error both in overruling the exceptions and in giving the charge complained of. We concur in that conclusion and refer to the opinion of that court for the grounds upon which it is based. Bank v. San Antonio & A. P. Ry. Co., 6 Texas Ct. Rep., 388.

The Court of Civil Appeals, however, held also that the error was harmless for the reason that the undisputed testimony showed that Koenig & Van Hoogenhuyze had authority not merely to negotiate a sale, but to sell the cotton, and that therefore under the evidence no other judgment would have been properly rendered except one for the defendants. We incline to differ with the court upon that point; but deem it unnecessary to decide it.

The court's charge was divided into paragraphs which were numbered. In the second paragraph the court submitted to the jury the question as to the authority of Koenig & Van Hoogenhuyze to sell the cotton covered by the bills of lading sued on; and instructed them in case they found they had such authority from the bank, to return a verdict for the defendants. In the third paragraph the jury were told, in effect, that if they found that Koenig & Van Hoogenhuyze did not have authority to sell the cotton, and they should also find that they had paid the proceeds to the bank, they should deduct the amount of such proceeds-from the amount they should find otherwise due the plaintiff.

The fourth and sixth paragraphs of the charge contained the instruction mentioned- above, to the effect, that if by the delivery of the bills of lading to the bank Koenig & Van Hoogenhuyze did not intend to give a bank a lien upon the cotton, a verdict should be returned for the defendants.

But further in instructing the jury as to the form of their verdict they were charged as follows: "If you find for the defendant your verdict will be: 'We, the jury, find for the defendant under subdivision ——,' or 'subdivisions —— of the court's charge,' indicating in order under what subdivision or subdivisions, if any, you find in favor of the defendant." The verdict of the jury was as follows: "We, the jury, find for the defendant under subdivision two of the court's charge. We also find in favor of the defendants William Van Hoogenhuyze and Carl Koenig." It is apparent from the verdict that the jury either did not pass upon the issue or issues submitted in paragraphs 4 and 6, or that they found the issues there presented in favor of the plaintiff. The logical effect of their finding is that the bank had a lien but had waived it by authorizing Koenig & Van Hoogenhuyze to sell the cotton. Therefore no harm could have resulted to the defendant, either by the refusal of the court to sustain the exceptions in question, or by the error in the court's charge if it were error.

But the evidence disclosed that after the failure of Koenig & Van Hoogenhuyze the agents of the bank went to the office of the railroad company to ascertain whether the cotton represented by the bills of lading was still in possession of the carrier, and that three or four bales were found—which the agent offered to deliver upon surrender of the bills of lading. Since he had no right to demand such surrender (Dwyer v. Railway Co., 69 Texas, 707), this was a conversion of the property. It is not claimed that these remaining bales were a part of the cotton which was sold; but it is urged on behalf of the defendant in error, that they were not shown to be a part of the cotton represented by the bills in controversy; and also, that if identified as such, there was no evidence to justify the jury in finding their value. The point that the plaintiff in error should have had a recovery for the three bales was distinctly made in the motion for a rehearing in the Court

of Civil Appeals. That, court in disposing of the motion held, in effect, that there was not sufficient evidence to go to the jury as to the value of the cotton and that therefore it was not error to refuse a recovery therefor. We think the testimony of the agent of the railroad company shows that the three bales were a part of the 222 bales covered by the bills of lading. It was agreed by counsel for the purposes of the trial, that the whole 222 bales were worth the sum of $6866.50. Then if the three bales were average bales of the lot, they were worth 3-222ds of that sum. But because it appeared from the allegations of the petition that the 222 bales were of different weights and classification, and it was not shown what the weight and classification of these bales were, it was held that the evidence was not sufficient to prove their value. In this we can not concur. There would be some reason for the ruling if the three bales had ever been in possession of the plaintiff in error. But they were in the hands of the defendant in error, and if either of the bales was worth less than the average bale of the entire lot it was incumbent upon the company to show it. It is of frequent occurrence for judgments to be affirmed in this court in similar cases—notably for damages to cattle in course of transportation where the evidence of the damage is much less satisfactory than that adduced in this case.

It also seems to us, that in so far as the plaintiff received the proceeds of the cotton covered by the bills of lading, which were sold by Koenig & Van Hoogenhuyze, that it would in any event be precluded from a recovery for any of the cotton so sold, except as to so much of it as was represented by the proceeds which it did not receive. This is especially so in view of the fact that the testimony of its president and cashier both show beyond question that Koenig & Van Hoogenhuyze were authorized to "negotiate a sale"—that is to say, to fix a price and agree upon a sale—and that, according to the usual course of business between them and the bank, they had theretofore sold cotton consigned in the same manner, received the money and paid it to the bank. The bank had a lien upon the proceeds of the sale, and in so far as it received such proceeds its claim upon the cotton was satisfied.

The point was also made in the argument in this court, that even if there was not sufficient evidence of the value of the three bales of cotton, yet the plaintiff was entitled to receive nominal damages, which would have carried the costs of the suit. We need not decide the question, since we hold there was evidence as to the value of these bales. But we suggest, that it occurs to us, that where it is sought to reverse a judgment merely to recover the costs, that it is too late to raise the question in this court. The point ought at least to be made in the Court of Civil Appeals in the brief and in the motion for a rehearing—and probably in the trial court.

For the error with reference to the bales of cotton which were not sold by Koenig & Van Hoogenhuyze, we think the judgment ought to

be reversed as to that cotton. But since the jury have found specifically that Koenig & Van Hoogenhuyze were authorized to make the sale, we are of the opinion that the judgment with reference to the cotton which was sold by them should not be disturbed. The judgment is accordingly affirmed as to the cotton so sold, but as to that which was still in the possession of the railroad company the judgment is reversed, and as to that matter the cause is remanded for a new trial.

*Affirmed in part and reversed and remanded in part.*