**EDWARDS et al. v. WEST TEXAS HOSPITAL, Inc., et al.**

No. 4768.

Court of Civil Appeals of Texas. Amarillo.

May 31, 1937.

Rehearing Denied July 10, 1937.

Vickers & Campbell and Wm. H. Evans, all of Lubbock, for appellants.

Crenshaw & Dupree and McWhorter & Howard, all of Lubbock, and Malone, Lipscomb, White & Seay and Touchstone, Wight, Gormley & Price, all of Dallas, for appellees.

FOLLEY, Justice.

This is a damage suit for alleged malpractice and negligent treatment by the appellees resulting in the death of Virgie Edwards. E. P. Edwards and his three minor children, Ethel, Andrew, and Virgie May, and Mrs. T. C. Hollander are the appellants and were the plaintiffs in the trial court. They are the surviving husband, minor children, and mother of Virgie Edwards, deceased. The West Texas Hospital, Inc., and Drs. Ann West and C. J. Wagner are the appellees and were the defendants in the trial court.

This is the second appeal of this case. The first appeal was predicated on the error of the trial court in giving an instructed verdict for the defendants at the conclusion of plaintiffs' testimony. This court reversed the trial court's judgment. 89 S. W.(2d) 801. We refer to this opinion for a complete statement of the nature of this case, however, the case as now before us is more fully developed in that we have the testimony of the appellees and the verdict of the jury, which were not in the former appeal.

The present case was submitted to a jury upon special issues and the jury returned a verdict against the plaintiffs in the trial court on every issue submitted. Judgment was entered for the defendants and against the plaintiffs, from which judgment and the court's action in overruling a motion for a new trial, appellants prosecute this appeal.

Plaintiffs alleged in substance that prior to February 8, 1934, Virgie Edwards was pregnant with twins and that Dr. Ann West was employed to treat her in her confinement. That Dr. West delivered only one child at the time Mrs. Edwards was in labor, which child is alive and one of the plaintiffs in this suit. The second child was not delivered for some twenty-three days thereafter. This second baby was not discovered by Dr. West. That on Feb-

ruary 10th, two days thereafter, Dr. West brought the said Virgie Edwards to the West Texas Hospital at Lubbock for diagnosis and treatment and Dr. C. J. Wagner was consulted by Dr. West. That the deceased remained in the hospital under the treatment of the defendants for eleven days and she was discharged without the second child being delivered or even discovered. That the defendants advised that the deceased be taken to her home for treatment, and that she there remained until about March 3d when she was brought to the Lubbock Sanitarium for diagnosis and treatment; that Dr. J. T. Krueger, of the Lubbock Sanitarium, advised an immediate operation, which operation was performed and a second child was delivered in a dead and decomposed condition. That on account of the delay in delivery of the second child an infection had set up and so poisoned the said Virgie Edwards that she died.

Plaintiffs further alleged that the defendants failed to make a proper diagnosis and to properly treat the deceased and deliver her of her second child. That the failure to properly diagnose and treat the deceased was negligence and the direct and proximate cause of her death.

They alleged that the West Texas Hospital held itself out as engaging in the diagnosis and treatment of human beings and had a professional staff of physicians and surgeons as representatives of the hospital. That Dr. Wagner was on this staff and one of its chief physicians and surgeons as well as an officer and director of the hospital. That all the defendants were partners and associated in a joint undertaking in diagnosing and treating the deceased, and by reason of the alleged negligence, they were each responsible, jointly and severally, for her suffering and death.

Each of the defendants answered with a number of demurrers and exceptions, a general denial, and a sworn denial of partnership with each other. The defendant West Texas Hospital alleged that it was incorporated and organized as a hospital and sanitarium for the purpose of furnishing accommodations and facilities for the sick and afflicted. That it furnished only those accommodations usually furnished by hospitals, such as rooms, beds, linens, food, and operating equipment. That it did not undertake to practice medicine or surgery or to direct in any way the diagnosis or treatment of patients, and that its only connection with deceased was to afford such facilities as were usually furnished by hospitals to physicians or surgeons who might see fit to place such a patient in its hospital. That the physicians who diagnosed and treated the deceased while she was in the West Texas Hospital did so in the exercise and practice of their own independent calling as a physician, and by reason of said facts, the hospital was not liable.

Dr. C. J. Wagner alleged that he made a careful examination of the deceased and that he was advised of her recent delivery of a child. That he used all the means which, in his opinion and best judgment as a physician and surgeon, were necessary at the time to diagnose her condition, and did not neglect to use any means which, in his judgment, would have aided him in arriving at a diagnosis of her condition. That after making the diagnosis and taking into consideration her weakened condition as a result of her recent labor and child bearing, he honestly believed that an immediate operation upon the deceased would have resulted in her death. That if her illness and death were due to any fault or negligence of any person, it was the fault or negligence of some one other than the defendant Dr. C. J. Wagner.

The defendant Dr. Ann West alleged that she was employed to wait upon Virgie Edwards during her confinement and subsequent delivery; that she delivered the first child. That prior to said time the deceased and her husband advised her that the deceased had been operated on and a large ovarian tumor had been removed. That she made a physical examination of Virgie Edwards and as a result of such examination and history, she was of the opinion that such a tumor had returned. That the deceased was not recovering from her childbirth as she had expected her to, and two days later she took Mrs. Edwards to the West Texas Hospital and placed her in the care of Dr. C. J. Wagner, and gave him a complete history of Mrs. Edwards' condition. That after she delivered the deceased to Dr. Wagner for treatment, she did not treat or administer to her nor have any supervision or control of the further treatment of Mrs. Edwards, but that Dr. Wagner had exclusive and complete control and charge of the patient. That all of this was done with the full knowledge and consent of Mrs. Edwards and her husband. That the death of Mrs. Edwards was not caused or contributed to by any

failure of said defendant to exercise skill, judgment, prudence, and diligence.

The trial court submitted the case to the jury upon special issues, and the jury found, among other things, (a) that the West Texas Hospital did not accept Virgie Edwards as a sick person for diagnosis and treatment; (b) that the hospital was not guilty of want of ordinary care in failing to remove the baby from the abdomen of Virgie Edwards while she was in the hospital; (c) that Dr. Wagner did not fail to exercise ordinary care to diagnose Virgie Edwards' ailment; (d) that Dr. Wagner was not guilty of negligence in failing to remove the baby from her body during the time she was under his care and treatment; (e) that Dr. West did not fail to exercise ordinary care to diagnose the condition of Mrs. Edwards; (f) and Dr. West was not guilty of negligence in failing to remove the baby from her body.

No objections were filed by the plaintiffs to this charge.

■ The appellants present only two assignments of error. Under their first assignment, the appellants, who were plaintiffs below, complain of the action of the trial court in allowing each of the three defendants in the trial court, six peremptory challenges to the jury panel. As indicated in the bill of exceptions, only twelve challenges of the eighteen peremptory challenges permitted to the three defendants were actually exercised. One of the chief complaints of the action of the trial court is based upon the proposition that the defendants and their attorneys retired in the same room and apparently consulted and acted together in making their peremptory challenges.

Article 2148, R.S.1925, provides: "Each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court, and to three in the county court."

It has long been well settled in Texas that it is entirely proper for the trial court to permit attorneys for various defendants who have been allowed six peremptory challenges, to consult each other in making such challenges. First National Bank of Cuero v. San Antonio & A. P. R. Co., 97 Tex. 201, 77 S.W. 410, 412. In this case Chief Justice Gaines, speaking for the Supreme Court of Texas, says: "But it was further objected to the mode of impaneling the jury that the defendants were permitted to consult and to act together in ex-ercising their challenges and in striking the objectionable names from the jury lists. The statute does not prohibit such action, and we are of the opinion that the court did not err in allowing it." We think that case clearly disposes of that portion of the assignment as to the defendants acting together in exercising their peremptory challenges. Certainly, if they were entitled to the six challenges each, they had the right to sit in counsel with each other in the exercise of those privileges. This leaves the only question remaining under this assignment as to whether the defendants were entitled to more than six challenges.

■ Two cases are relied on by appellants for their contention that the appellees were not entitled to six peremptory challenges each. The first case is that of Hargrave v. Vaughn et al., 82 Tex. 347, 18 S. W. 695. In that case, the suit was for damages against two partners owning a drug store and their employee, the prescription clerk, who allegedly was negligent in filling a prescription. He was charged with furnishing a poisonous drug which caused the death of the plaintiffs' child. There was no issue in that case as to the partnership of the owners and there was no issue as to whether or not the clerk was their employee. There was but one act committed. In such a state of facts the Supreme Court held that there was but one party defendant to the suit and therefore they were not entitled to six peremptory challenges each.

The other case relied upon by appellants to support their contention is that of Baldridge v. Klein et ux. (Tex.Civ.App.) 56 S.W.(2d) 897. As will be observed from reading that case, there were only two defendants. One was Baldridge, and the other was the Graham Mill & Elevator Company, a corporation alleged to be Baldridge's employer. The lawsuit was the outgrowth of an automobile accident when a car driven by Baldridge collided with a car occupied by plaintiffs. The issues as against the two defendants were identical with the exception of the single issue of agency—that is, as to whether or not Baldridge was the agent of the elevator company. In that case, too, there was only one act committed. The Court of Civil Appeals at Eastland held in that case that there was but one party defendant and therefore they were not entitled to six peremptory challenges each. However, if this Baldridge v. Klein Case were in point

here, we could attach very little value to it due to the fact that the Supreme Court of Texas granted a writ of error in that case on the very assignment of error complaining of the action of the trial court in denying to each of the defendants six peremptory challenges. Appellees have filed in this court a copy of the notation made by the Supreme Court of Texas where it granted the writ of error in Baldridge v. Klein. We are informed by appellees' brief that this case was settled by compromise while pending in the Supreme Court and after the granting of the writ of error.

In the present case we have a far different situation. According to the plaintiff's petition, Dr. Ann West was guilty of a negligent act on February 8, 1934, a date prior to the time Dr. C. J. Wagner heard of the case, and before the deceased entered the West Texas Hospital for treatment. If this allegation was true, then there might have been a recovery by the plaintiffs against Dr. West for failure to deliver the second child on February 8, 1934. Certainly, Dr. Wagner and the West Texas Hospital could not be charged with any negligence occurring before February 10, 1934, the date the deceased was placed in the hospital, and in the care of Dr. Wagner. As before stated, the plaintiffs alleged: "That each and all of the defendants were jointly and severally negligent, which caused and contributed to cause the suffering and death of the said Virgie Edwards as heretofore alleged. * * * So, as respects the diagnosis and treatment of said Virgie Edwards, and especially while she was in the defendant Hospital and being primarily treated and diagnosed by it and Dr. Wagner, all of the defendants were partners, and associated in a joint undertaking and enterprise of diagnosing and treating said Virgie Edwards, but by reason of the negligence heretofore alleged against each and all of them, they and each of them became responsible for the negligence causing the suffering and death of said Virgie Edwards."

As stated, the West Texas Hospital, Inc., pleaded that it had never undertaken to practice either medicine or surgery, nor had it ever attempted to direct any diagnosis, treatment, or operation in the hospital. The hospital denied that Dr. West had ever been employed by it in any capacity and further denied that Dr. Wagner had ever been in the employ of the hospital. All of the defendants denied any partnership existed between them. Dr. West pleaded that she ceased to have any connection with the case after she delivered the deceased to the hospital and gave Dr. Wagner the history of the case. Dr. Wagner pleaded that if there was any negligence causing the death of the deceased, that the same occurred before he had any connection with the case.

It is quite obvious from the foregoing statements that there were many and diverse interests as between the defendants and various issues raised by the pleadings. As heretofore pointed out, there might have been a recovery against Dr. West for negligent acts occurring before the other two defendants became connected with the case. There might be a recovery against the two doctors, but no recovery against the hospital upon the plea of the hospital that it did not undertake any treatment in connection with the case. There might be a recovery against Dr. Wagner alone on the theory that he was negligent subsequent to February 10, 1934.

We think this case falls within the rule announced in St. Louis, S. F. & T. Ry. Co. v. Rutland (Tex.Com.App.) 292 S.W. 182. In that case the plaintiff sought damages against two railroads for the death of her husband. Joint acts of negligence were alleged against the two defendants. If there had been no other allegations in plaintiff's petition, the two railroads would not have been entitled to six peremptory challenges each. But there were some charges of negligence against one railroad that were not charged against the other. The Supreme Court of Texas, therefore, held that each railway company was entitled to six peremptory challenges. In that case, as in the present case, there was no cross-action as between the defendants. Neither railway company sought any affirmative relief against the other. The decision was based on the ground that there were issues between the plaintiff and one of the defendants that were not common as between the plaintiff and the other defendant. This exact question was passed upon in the case of International & Great Northern Ry. Co. v. Bingham, 40 Tex.Civ. App. 469, 89 S.W. 1113, 1114. In delivering the opinion of the court, Judge Pleasants said: "It is true that in most of the cases in which this rule has been announced one defendant pleaded over against the other, but the rule has not been restricted in its application to cases of this character,

and the general principle is established that when, under the pleadings, the jury are required to determine material issues between the defendants, each of the defendants is entitled to the statutory number of challenges. While it is true that in the present case both defendants denied generally that the plaintiff had lost any of her shipment of syrup, and to that extent their defense was common, each contended that, if plaintiff sustained any loss, the other defendant was alone responsible therefor. From this it is apparent that, if plaintiff's loss should be established by the evidence, the interests of the defendants would at once become antagonistic, and the issue which the jury would then be called upon to determine would be which of them was responsible for such loss. In selecting the jury to determine this issue we think it clear that each of the defendants should be considered a party to the suit in the purview of the statute, and entitled to the statutory number of challenges."

■ Inasmuch as the appellees used only twelve challenges though eighteen were allowed, we think it would be sufficient to show that only two of the defendants had diverse interests and antagonistic defenses to the material issues involved, and that this matter should be considered in the light of the status of the case as it was presented to the district judge when he was called upon to determine the matter of challenges. At that time each of the defendants, though not pleading any cross-action as to the other defendants, was seeking to shift the alleged acts of negligence upon the shoulders of at least one of his codefendants. That was particularly true with reference to the two physicians. From the further fact that the plaintiffs alleged separate and distinct acts of negligence against the defendants, we think the trial court committed no error with reference to the jury challenges. So holding, we therefore deem it unnecessary here to go into the matter as to the necessity of the appellants to show injury resulted to them by reason of the action of the trial court. Missouri Pacific Ry. Co. v. Cheek (Tex. Civ.App.) 159 S.W. 427; Gussett et al. v. Nueces County et al. (Tex.Com.App.) 235 S.W. 857; Rogers v. Armstrong Co. et al. (Tex.Civ.App.) 30 S.W. 848; Waggoner v. Dodson et al., 96 Tex. 6, 68 S.

W. 813, 69 S.W. 993; City of San Antonio v. Reed et al. (Tex.Civ.App.) 192 S. W. 549.

■ Appellants' second assignment of error is in substance that the verdict of the jury and judgment of the court based thereon for the defendants is contrary to the evidence adduced and against the preponderance of the evidence.

Appellees object in their brief to our consideration of such an assignment on the ground that it is too general and multifarious. We are inclined to the opinion that such an objection is well taken. Clevenger v. Burgess (Tex.Civ.App.) 31 S.W.(2d) 675; Wacasey et al. v. Wacasey et al. (Tex.Civ.App.) 279 S.W. 611; Hill et al. v. Gomez et al. (Tex.Civ.App.) 260 S.W. 618; Houston, E. & W. T. Ry. Co. v. Hamlin Lumber Co. et al. (Tex.Civ.App.) 135 S.W. 605; Gibson et al. v. Pierce et al. (Tex.Civ.App.) 146 S.W. 983; Foster et al. v. Gossett et al. (Tex.Civ.App.) 17 S. W.(2d) 469; International-Great Northern R. Co. v. Miner (Tex.Civ.App.) 54 S. W.(2d) 216; article 1844, R.C.S., as amended by Acts 1931, c. 75, § 1. (Vermon's Ann.Civ.St. art. 1844). Rules 24, 25, and 26 for the governing of Courts of Civil Appeals. While we might be justified in disregarding this assignment, we have read the record and have found that there was some testimony to support every material issue of negligence and proximate cause of the injuries herein as found by the jury. Both of the doctors involved testified that each had used all the degree of care and skill that he possessed in the diagnosis and treatment of the deceased. There was further testimony in the case from Dr. Olen Key, Dr. V. V. Baugh, and Dr. J. H. Stiles of Lubbock, and from Dr. A. C. Scott of Temple, in support of the theory of the defendant doctors that an operation upon the deceased while she was in a weakened condition in the defendant hospital after childbirth would have been dangerous for the patient, and that even though there was an incorrect diagnosis of the ailment of the deceased, the treatment she received in the hospital was the proper treatment that should have been given had the doctors known her true ailment.

Finding no reversible error, we affirm the judgment of the trial court.