**LOFLAND v. JACKSON et al.**

No. 6068.

Court of Civil Appeals of Texas. Amarillo.
Oct. 30, 1950.

Rehearing Denied Nov. 27, 1950.

Campbell & Brock and Vickers & Vickers, Lubbock, for appellant.

McWhorter, Howard, Cobb & Gibson and Crenshaw, Dupree & Milam, Lubbock, for appellees.

PITTS, Chief Justice.

This suit was filed by appellant, Buna Lofland, a feme sole, against appellees, Richard E. Jackson and Avalanche-Journal Publishing Company, a corporation, to recover actual damages in the sum of $36,000, together with special damages in the sum of $2,500 because of personal injuries sustained by her about 8:25 o'clock a. m. on November 24, 1948, at a street intersection in Lubbock as a result of her body coming in contact with a moving automobile owned and operated by appellee Richard E. Jackson who was an employee of appellee Avalanche-Journal Publishing Company. The case was tried to a jury on special issues and as a result of the verdict judgment was rendered for appellees from which an appeal has been perfected to this court.

Appeal predicates her appeal upon eleven points of error, some of which are challenged by appellee, Avalanche-Journal Publishing Company, on the grounds that they are multifarious and that some of them were waived because no complaint was made about them in appellant's motion filed in the trial court seeking a new trial. We find some merit in the challenge made by the said appellee. Appellant's first point charges that the trial court erred in submitting special issues 1 through 9 to the jury. In these issues the trial court inquired about three separate and distinct acts of negligence on the part of appellee Jackson and inquired if each constituted negligence and if such negligence, if any, was the proximate cause of the injury. The acts of negligence inquired about were whether or not the said appellee exercised ordinary care to avoid the accident; whether or not he failed to keep a proper lookout; and whether or not he yielded the right of way to appellant.

It has been held that a point of error is multifarious and should not be considered on appeal when it employs more than one specific ground of error or when it attempts to attack several distinct and alleged errors and rulings of the trial court. Several of appellant's other points of error are multifarious. Her fifth point charges that the trial court erred in submitting to the jury issues 11 to 16, inclusive, inquiring about separate and distinct acts of negligence by appellant and if each such constituted contributory negligence which proximately caused her injuries. We likewise notice that appellant's points of error are very lengthy and do not briefly and definitely point out the specific alleged errors or concrete rulings of the trial court about which she is complaining. We shall not prolong this opinion by repeating any of appellant's lengthy points of error but in some instances a single point is typewritten and covers approximately a page and a half of long paper 14 inches by 8½ inches and her points are argumentative, state alleged facts, voluminous and are too general and too indefinite to be considered on appeal. Such matters are thoroughly discussed by this court, with numerous authorities cited, in the case of Darling v. Panhandle & Santa Fe. Ry. Co., Tex.Civ.-App., 209 S.W.2d 660. We likewise find that some of the matters about which appellant complains in her first point are waived because they were not distinctly set forth as grounds of error in her motion in the trial

court for a new trial as is required by Rule 374, Texas Rules of Civil Procedure, and authorities thereunder cited.

■ However, it has long been the policy of this court to indulge a liberal construction in favor of the sufficiency of a brief and to give effect thereto if we can determine with some degree of certainty what a party is complaining about. A failure to comply with the rules governing briefing on appeal does not meet with our approval, yet we think we are vested with discretion in the matter of considering points of error even if they are not presented in strict compliance with the rules if we can determine from the brief the substance of the complaints made. It appears from the record that the controlling issues here presented can be disposed of without discussing in detail the points of error presented.

The jury exonerated appellee Jackson, the driver of the automobile, and appellant both of any negligence that resulted in appellant's injuries and found that the collision in question, which resulted in her injuries, was an unavoidable accident. Appellant contends that appellee Jackson was guilty of negligence as a matter of law and that such negligence was the proximate cause of the collision which resulted in her injuries as a matter of law. Appellant further contends that appellee Avalanche-Journal Publishing Company is liable jointly and severally with Jackson to her for damages as a result of Jackson's unlawful negligence because Jackson was an employee of Avalanche-Journal Publishing Company and was using his automobile at the time and place of the collision in the course of his employment.

The record reveals that the accident occurred at the intersection of 14th Street and Avenue L in Lubbock near the business area. 14th Street runs east and west and Avenue L runs north and south. There were no signal lights at the street intersection to warn or govern traffic. On this early morning occasion appellant was walking north along the east side of Avenue L where it crossed 14th Street. Appellee Jackson was on his way from his home to the business establishment of appellee Avalanche-Journal Publishing Company with which he was employed. He was driving south on Avenue L but turned east to his left onto 14th Street when he reached the intersection of 14th Street and Avenue L and just before he reached the point where the collision occurred. Appellant was on the cross-walk for pedestrians and near the middle of 14th Street when the collision occurred. At the southeast corner of the intersection of 14th Street and Avenue L and on a lot adjacent to both, there is a large two-story house. The said Street and Avenue are each paved and are each 54 feet wide from curb to curb. On the occasion in question automobiles were parked on both sides of 14th Street east of its point of intersection with Avenue L. They were parked head-on, at an angle and facing the curb, and each extended out into the street 12 or 13 feet on each side of 14th Street. They were parked along the curb on the said street extending nearly to the said intersection with some of them parked in front of the two-story house heretofore mentioned. One automobile was parked near the pedestrian cross-walk where the collision occurred, extending in the street so that it and the two-story house cast a shadow over the pedestrian walkway.

Appellee Jackson testified, in effect, without being contradicted that on the occasion in question he practically stopped his automobile as he approached the intersection in question and looked for other moving vehicles but saw none approaching from any direction. Neither did he see any pedestrians crossing either 14th Street or Avenue L. At that time of the year the sun had risen south of due east and it was shining at an angle and to his left as he approached the intersection. Yet it did not then interfere with his vision. He shifted his automobile into second gear and proceeded into the intersection to make a left turn on 14th Street heading east at a speed of about 10 miles per hour. The two-story house on the southeast corner of the intersection cast a shadow from the sun three-fourths of the way across the street intersection. As he turned east out of the intersection the said shadow gradually cov-

ered his automobile in front and finally covered his face shutting the sun off and affecting his vision momentarily, followed immediately by the bright sunlight coming out from behind the two-story house, striking Jackson, the driver, in the face and blinding him momentarily. Until then he had not seen appellant or any other pedestrians crossing either 14th Street or Avenue L. At the moment the light of the bright sun hit him in the face, he saw an image in front of his automobile and quickly put on his brakes. He stopped his automobile within 3 or 4 feet but the collision occurred just as he saw the image and as he was blinded by the sun. He got out of his automobile and went to appellant immediately. She was lying near the middle of 14th Street and he could see that she had been injured and was shocked if not almost hysterical. But she remarked that she had been hit and wanted to go to her place of business nearby. He, another man and two ladies who appeared on the scene, got her in an automobile and took her to the hospital. He further testified that the shadow of the two-story house obstructed his clear vision momentarily as he made the turn and prevented him from seeing distinctly and determining particularly about any object within the shadow just ahead of him. He likewise testified that he did not know until that occasion about the dangerous existing conditions at that intersection on a bright sunshiny morning at that season of the year, but he had observed it several times since then. He testified that appellant told him after they got to the hospital that morning that she saw him coming but she thought he would see her and stop or that she would be out of the way in time to avoid the collision; that she also told him at the hospital that it was no more his fault than hers and that it was just one of those things that could not be helped. Appellant denied having made the latter statement to him.

Appellant testified that she was on her way to her place of business about 8:25 o'clock on the morning she was injured; that she saw the automobile approaching, coming south on Avenue L less than a minute before it hit her but did not see it again until an instant before it hit her; that it knocked her down in the street; that she did not see the automobile make the left turn at the street intersection; that she jumped and tried to get out of the way when she saw it just before it hit her but she was hit and knocked east where she fell in the street and was injured. She also testified that she was wearing a black dress and a blue scarf that morning; that the sun rose a way south of due east at that season of the year; that the sun was very bright on the morning of the accident and cast a shadow of the two-story house in a northwesterly direction in the street intersection in question. She likewise testified that Jackson's automobile was travelling at a rate of about 25 miles per hour when it hit her and that she was over two-thirds of the way across 14th Street when the collision occurred. However, she pleaded that she was about one-third of the distance across the street when Jackson's automobile struck her.

Jackson testified that he was travelling about 10 miles per hour just before the collision occurred and that appellant was less than half way across 14th Street when the collision occurred and that she fell forward east and north from the point of collision and landed several feet away.

Appellant's witness, Mrs. Maryellen Dye, testified that she appeared on the scene soon after the accident occurred and that Jackson's automobile was standing about the center of the intersection and appellant was a little past the intersection.

Mrs. Earl G. Williams testified for apellees to the effect that she had been a friend to appellant for some time and had visited her while she was in the hospital; that she was visiting her on Sunday after the accident had occurred on the previous Wednesday when appellee Jackson and his wife came to the hospital to visit appellant, who introduced the witness to the Jacksons; that in the course of their conversations appellant said that neither one of them saw the other at the time of the collision and neither one of them was any more to blame than the other.

Mrs. Richard E. Jackson, appellee Jackson's wife, gave testimony corroborating the testimony given by Mrs. Williams. Mrs. Jackson further testified that the appellant said on that occasion that the accident was as much her fault as it was the fault of Jackson and that "it was just an unavoidable accident".

Appellant was recalled as the last witness heard but she did not deny having made the foregoing statements in the presence of the foregoing witnesses.

The jury found that Jackson could not have avoided the collision by the exercise of ordinary care; that he kept a proper lookout for pedestrians at the time and place of the collision; that he failed to yield the right of way to appellant on the occasion in question but that such failure was not negligence on his part; that appellant could have avoided the collision by the exercise of ordinary care but that such did not constitute contributory negligence on her part; that she failed to keep a proper lookout for her own safety at the time and place of the collision but that such failure did not constitute contributory negligence on her part. Following these findings the jury found that the collision in question was an unavoidable accident and did not award any damages to appellant. The jury likewise found that appellee Avalanche-Journal Publishing Company, through its agents, did not exercise any right of control over appellee Jackson in the operation of his automobile and that appellee Jackson was not operating his automobile in the furtherance of and for the benefit of the business of appellee Avalanche-Journal Publishing Company at the time and place of the collision.

In her contention that appellees were liable for negligence per se and that she had the right of way and was relieved of the duty of keeping a proper lookout, appellant relies upon the provisions of Article 6701d, Vernon's Revised Civil Statutes, and particularly Section 77 thereof and upon a Lubbock City Ordinance of similar import. Article 6701d, Section 77, provides in part as follows: "(a) When traffic-control signals are not in place or not in oper-ation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross-walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

In its instructions to the jury the trial court, without any objections from appellant, incorporated the foregoing provisions of the law and charged that such provisions of the law applied in cases wherever they were practicable.

We recognize the value of the law herein previously quoted and the value of the Lubbock City Ordinance of a similar import in a proper case. But under the facts and circumstances here presented we do not think such provisions of the law support appellant's contentions. It is our opinion that the mere fact that a person has the right of way under a statute or ordinance does not excuse him from keeping a proper lookout for his own safety and the safety of others. In the case of Checker Cab Co. v. Wagner, Tex.Civ.App., 199 S.W.2d 791, 792, the rule is well stated in the following language: "Although there is conflict of authority in other jurisdictions (see Annotations 89 A.L.R. 838; 136 A.L.R. 1497) the weight of authority and the settled rule in this State is that 'The right of way rule is not absolute but relative, and subject to the qualification that a person entitled to claim that right will exercise it with proper regard for the safety of himself and others.' Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910, 912, Wr.Ref.; Sherwin-Williams Co. of Texas v. Delahoussaye, Tex.Civ.App., 124 S.W.2d 870, Wr.Dis.; Cruse v. Chacon, Tex.Civ. App., 67 S.W.2d 399, Wr.Dis."

In the case of Lewis v. Martin, supra, this court held that such provisions of a statute must be given a reasonable interpretation and that such a statute does not

unqualifiedly relieve a person of the exercise of such care as an ordinarily prudent person would exercise under the same or similar circumstances.

In the case of Stehling v. Johnston, Tex.Civ.App., 32 S.W.2d 696, 697, writ refused, appellant contended that he had the right of way and was relieved of the duty of keeping a proper lookout but the court did not agree with such a contention and said: "We are unable to sustain this contention, * * *. The duty rests upon every traveler to keep a lookout in all situations of which he may be aware. If he is in that vague and elusive position of having the right of way across a city street intersection, yet he may not proceed blindly and in disregard of the dangers which common knowledge and everyday experience and observation teach us lurk in every such situation. Having such right of way may give the traveler a certain technical legal status of superiority over his fellows thereabouts, but as a practical matter it gives him but scant assurance of safety from the recklessness or carelessness of others not so positioned and knowing or caring but little for his technical advantage. He is still under the duty of protecting himself from such heedless acts of others as may be anticipated or foreseen from his point of vantage, whatever and wherever it is."

We do not think the last cited foregoing rule of law is fully applicable to the facts and circumstances in the case at bar where appellant was dressed in dark clothing and walking in a shadow without having exercised ordinary care or kept a proper lookout when the driver of an automobile, appellee Jackson, had exercised ordinary care and kept a proper lookout, nevertheless hit appellant with his automobile because a bright flash of the sun suddenly hit him in the face and blinded him. However we think the foregoing rule of law is in some respects applicable to the instant case. It is our opinion under the record here presented and for the reasons heretofore stated that appellant was under a duty as a matter of law to keep a proper lookout as an ordinarily prudent person would have

done for her safety. It is our opinion further that appellee Jackson was not guilty of negligence per se and that the evidence supports the jury's findings acquitting him of any negligence in the matter. We believe the law applicable to the issues here presented was thoroughly discussed by this court in a similar case, that of Brown v. Dallas Ry. & Terminal Co., 226 S.W.2d 135, writ refused, and we cite it and other authorities there cited in support of our conclusion.

█ It has likewise been generally held that the question of whether a negligent act, committed in violation of a statute, was the proximate cause of an injury which follows, is a question of fact and not of law. Gulf States Utilities Co. v. Selman, Tex.Civ.App., 137 S.W.2d 122; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063. At any rate it is our opinion that the sudden blinding of Jackson by the sun raised a jury issue of whether or not under the facts and circumstances he was guilty of negligence because of his conscious or unconscious failure to yield the right of way to appellant. Under the law in the case as given by the court the jury found that he was not negligent because of his failure to yield her the right of way. Having been exonerated of negligence, there was no need for a finding on the issue of proximate cause. It has likewise been held by the Supreme Court of Texas in negligence cases that when the driver of a motor vehicle is blinded by artificial light, such as the bright lights of an approaching automobile at nighttime or a bright arc light by a railroad crossing at nighttime, and injury results because of a collision, such raises an issue of new and independent cause. Tarry Warehouse & Storage Co. v. Duvall, 131 Tex. 466, 115 S.W.2d 401; Greer v. Thaman, Tex.Com. App., 55 S.W.2d 519; Orange & N. W. R. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973.

█ Both appellees pleaded unavoidable accident in the case at bar. After acquitting both parties involved in the collision of negligence, the jury found that the collision in question was an unavoidable

accident. In the case of Texas & P. Ry. Co. v. Edwards, 36 S.W.2d 477, the Commission of Appeals held that an accident which happens without fault on the part of either party is classed in law as an unavoidable accident. The Supreme Court held that the issue of unavoidable accident was raised in the case of Orange & N. W. R. Co. v. Harris, supra, where the driver of an automobile was blinded by a stationary arc light just before a collision with a railroad car and it was held that such an issue was raised in the case of Greer v. Thaman, supra, where a bus driver was blinded by bright lights of an approaching automobile. It is our opinion that the issue was raised in this case and there was evidence of probative force to support the jury finding. Its finding in such a matter is conclusive and appellant's complaints to the contrary are overruled.

Appellant having alleged that appellee Jackson was driving and operating his automobile while in the course of his employment with appellee Avalanche-Journal Publishing Company at the time and place of the collision in question and that Jackson was in fact engaged in the transaction of his employer's business at the said time and place, she assumed the burden of establishing such facts by a preponderance of the evidence before appellee Avalanche-Journal Publishing Company would be liable to her for damages in any event. The jury found that appellee Jackson was not operating his automobile in the furtherance of and for the benefit of the business of appellee Avalanche-Journal Publishing Company on the occasion in question. Such a finding is amply supported by the evidence. The jury likewise found that appellee Avalanche-Journal Publishing Company, through its agents, did not exercise any right of control over appellee Jackson in the operation of his automobile at the time and place of the collision in question. This finding is likewise amply supported by the evidence. These findings being amply supported by the evidence preclude recovery in any event from appellee Avalanche-Journal Publishing Company. But, be that as it may, it is our opinion that the evidence as a whole,

considered in its most favorable light, did not raise the two said issues submitted to the jury and that the motion of appellee Avalanche-Journal Publishing Company for a peremptory instruction as to it should have been sustained by the trial court. The said appellee has preserved its point of error by a cross assignment complaining because the trial court did not sustain its motion timely filed asking for a peremptory instruction for lack of sufficient evidence of probative force to raise the issues.

The evidence conclusively shows that appellee Jackson was an advertising salesman for appellee Avalanche-Journal Publishing Company and solicited advertising for it from accounts in Lubbock; that Jackson's daily working hours were from 8:30 a. m. o'clock to 5:00 p. m. o'clock each work day with one hour off at noon and that he was on his way from his home to the office of his employer before working hours on the morning of November 24, 1948, to report before he was to begin his work when the collision occurred at 8:25 a. m. o'clock. The evidence further shows that nothing was said in the course of Jackson's employment about the use of his automobile or an allowance for such and that Jackson never at any time told any of the agents of his employer that he was using his automobile in the performance of his duties; that Wayne Henly, advertising manager for appellee Avalanche-Journal Publishing Company, who employed Jackson and who supervised his work for his employer, did not know prior to the collision in question that Jackson was using his automobile to solicit advertising; that Parker F. Prouty, president and general manager of Avalanche-Journal Publishing Company, did not know prior to the collision that Jackson was using his automobile in soliciting advertising; that on the day of the collision Jackson knew in advance that he would work in the office that day and would not call on any customers that day and that he did not use his automobile in calling on any customers on that day; that on the day in question and at the time and place of the collision Jackson was using his automobile for his own personal convenience; that the matter of how Jack-

son travelled over the City of Lubbock in performing his duties under his contract of employment was wholly his own responsibility; that Jackson furnished his own automobile and paid all of the operating expenses himself in the performance of his duties; that the agents of his employer never gave instructions to him about the order of his work or how he should travel during his working hours and how he should travel in going from his home to work or returning.

The foregoing facts were conclusively established. Such being true it is our opinion that the facts and circumstances when most favorably considered raised no more than a mere surmise or suspicion that appellee Avalanche-Journal Publishing Company might have been liable for any acts of negligence by Jackson. It is our opinion further that the evidence was insufficient to justify the submission of such issues to the jury. Since the evidence conclusively shows that Jackson was using his own automobile for his own personal convenience on his way to work and not engaged in the business of his employer at the time and place of the collision in question and that Jackson was not being directed by the agents of his employer or not even subject to their direction, we think the Commission of Appeals with the approval of the Supreme Court announced the rule governing such a matter in the one opinion handed down in two cases reported together, American Nat. Ins. Co. v. Denke and the same Company v. Shepherd, 128 Tex. 229, 95 S.W.2d 370, 373, 107 A.L.R. 409, in the following language: "It is settled that 'the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the *causal* act or omission at the very instant of the act or neglect.'"

Based upon the rule of law there announced, the judgments of the lower courts were reversed in both cases by the Supreme Court and judgments were rendered for the master. That case has since been many times cited. In the case of Southwest Dairy Products Co. v. De Frates, 132 Tex.

556, 125 S.W.2d 282, 122 A.L.R. 854, the Commission of Appeals with the approval of the Supreme Court held that in such cases the test of a master's liability for the negligence of a servant is whether or not the servant was engaged in his master's business at the time of the alleged act of the servant's negligence. This case has likewise been many times cited.

For the reasons stated we sustain the first cross assignment of error of appellee Avalanche-Journal Publishing Company. Our position is supported by the additional authorities: Thannisch Chevrolet Co. v. Kline, Tex.Civ.App., 134 S.W.2d 433, writ refused; Pyle v. Phillips, Tex. Civ.App., 164 S.W.2d 569; Postal Telegraph Cable Co. v. Industrial Accident Commission, 1 Cal.2d 730, 37 P.2d 441, 96 A.L.R. 460; Blashfield Encyc. of Automobile Law, Section 3041.

Appellant complains that the trial court erred in permitting each of the appellees as party defendants to exercise six peremptory challenges to the jury panel making them twelve together while it limited appellant as plaintiff to six such challenges. Appellee Avalanche-Journal Publishing Company filed a plea in reconvention over and against appellee Jackson in a cross action, seeking judgment for recovery against Jackson for any amount adjudged against it and in favor of appellant because of any acts of negligence of Jackson. Appellee Avalanche-Journal Publishing Company pleaded that appellee Jackson was not acting in the course of his employment for it and was not engaged in the furtherance of its business at the time and place of the collision in question. This defense was not available to appellee Jackson, against whom the Avalanche-Journal Publishing Company sought judgment and for indemnity and contribution. Appellee Jackson joined issues with appellee Avalanche-Journal Publishing Company by filing a general denial and praying that such appellee take nothing by reason of its cross action.

The rule is well established that more than one defendant having iden-

tical interests and a common defense in a suit constitute but one party. If there is no suggestion of antagonism of interests between defendants found in the pleadings and no adverse issues pleaded by them, they constitute one party and are entitled to only six peremptory challenges to the jury panel in the district court. But the rule is different if the pleadings show that one defendant has asked for judgment over against another defendant. The question then to be determined is whether or not there is a conflict of interest between the defendants. In the case of Gussett v. Nueces County, 235 S.W. 857, 861, the Commission of Appeals lays down the following rule: "It is well settled in Texas that each party to a civil suit in a district court shall be entitled to six peremptory challenges, and parties defendant asking judgment over against each other are within the rule. See Waggoner v. Dodson, 96 Tex. 6, 68 S.W. 813, 69 S.W. 993; First National Bank v. S[an] A[ntonio] & A. P. Ry. Co., 97 Tex. 201, 77 S.W. 410; Texas & Pacific R. Co. v. Stell [Tex.Civ. App.], 61 S.W. 980; I[nternational] & G. N. [R. Co.] v. Bingham, 40 Tex.Civ. App. 469, 89 S.W. 1113; Hogsett v. Northern Texas Traction Co., 55 Tex.Civ.App. 72, 118 S.W. 807."

The rule applies where any of the interests of codefendants are antagonistic and in such event each defendant constitutes a separate party to the suit and is entitled to his statutory number of jury challenges. International & G. N. R. Co. v. Bingham, 40 Tex.Civ.App. 469, 89 S.W. 1113; Edwards v. West Texas Hospital, Tex.Civ. App., 107 S.W.2d 729; St.Louis, S. F. & T. Ry. Co. v. Rutland, Tex.Com.App., 292 S.W. 182; 26 Tex.Jur. 669, Paragraph 101. For the reasons stated it is our opinion that the trial court did not commit error in permitting each appellee as a defendant six peremptory challenges to the jury panel and appellant's complaint to the contrary is overruled.

Because of the manner of our disposition herein made of the controlling issues here presented, the remaining complaints and assignments of error become immaterial and are all overruled.

A careful examination of the record and the briefs presented reveals no reversible error and the judgment of the trial court is affirmed.