Mrs. Sybil GLASGOW, Appellant,

v.

FLOORS, INC. OF TEXAS et al., Appellees.

No. 15998.

Court of Civil Appeals of Texas.

Dallas.

April 6, 1962.

McCulloch, Ray, Rembert, Luna & Trotti and William Rembert, Jr., Dallas, for appellant.

Thompson, Knight, Wright & Simmons and Timothy E. Kelley, Dallas, for appellees.

WILLIAMS, Justice.

Mrs. Sybil Glasgow, while walking across a street in the City of Dallas, was knocked down and injured by an automobile owned and driven by Forrest Franklin Stegall. Mrs. Glasgow, a feme sole, filed suit for personal injuries against Stegall and also against his general employer, Floors, Inc. of Texas, and also Texas Instruments, Inc., in whose plant Stegall worked under a contract between Floors, Inc. of Texas and Texas Instruments, Inc.

Recovery was sought against the corporate defendants on the theory of respondeat superior. It was undisputed that at the time of the accident Stegall was driving his own automobile from his home to his place of work with the Floors, Inc. of Texas at the Texas Instruments, Inc. plant. The trial court severed the cause of action against Stegall, leaving the action against Floors, Inc. of Texas and Texas Instruments, Inc. in a separate suit. The court then granted summary judgment in favor of both corporate defendants, from such judgment Mrs. Glasgow appeals contending, in two points of error, that the evidence presented in support of the motions for summary judgment create an issue of fact that Stegall was engaged in the course of his employment for Floors, Inc. of Texas at the time his car struck Mrs. Glasgow.

While Mrs. Glasgow perfected her appeal as to both Floors, Inc. of Texas and Texas Instruments, Inc., she states in her brief that she only desires to prosecute her appeal from that part of the judgment in favor of Floors, Inc. of Texas. Accordingly, we sustain motion on behalf of Texas Instruments, Inc. to dismiss this appeal. Judgment in favor of Texas Instruments, Inc. is affirmed.

■ Since this is a summary judgment action under Rule 166–A Texas Rules of Civil Procedure, we are governed by well-established rules announced by our Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, affirming this Court in Tex.Civ.App., 243 S.W.2d 220. A defendant moving for a summary judgment must assume the negative burden of showing, as a matter of law, that the plaintiff has no cause of action against him. Neigut v. McFadden (Tex.Civ.App.), 257 S.W.2d 864; Statham v. City of Tyler (Tex.Civ.App.), 257 S.W.2d 742; Achterberg v. Gillett (Tex.Civ.App.), 322 S.W.2d 306; Seale v. Muse (Tex.Civ.App.), 352 S.W.2d 534.

The sole question presented on this appeal is whether the appellant, Floors, Inc.

of Texas, sustained its burden under Rule 166–A T.R.C.P. by demonstrating, through the medium of the pleadings and evidence in support of said motion that Stegall was not acting within the course and scope of his employment for Floors, Inc. of Texas at the time he struck Mrs. Glasgow. To arrive at an answer to this question we have carefully examined the pleadings and supporting evidence. Insofar as the pleadings are concerned, Mrs. Glasgow alleged that at the time Stegall struck her with his automobile at about 9:30 p. m. on March 29, 1960 that he was an employee, and acting within the course and scope of his employment for Floors, Inc. of Texas and for Texas Instruments, Inc. Floors, Inc. of Texas and Texas Instruments, Inc., following a general denial, specifically denied that Stegall was in the course and scope of his employment for either of said defendants. In their respective motions for summary judgments both Floors, Inc. of Texas and Texas Instruments, Inc. move for judgment based upon the sole proposition that Stegall was not in the course and scope of his employment for either defendant at the time of the accident. Mrs. Glasgow filed no answer to these motions. The motion of Floors, Inc. of Texas, being the only one with which we are presently concerned, was supported by the deposition of Stegall and also deposition of Harry Goff.

The material portions of Stegall's testimony may be fairly summarized as follows: That on March 29, 1960 he had started from his home to go to work at Texas Instruments, Inc. near Richardson, traveling in his own automobile alone, when he struck Mrs. Sybil Glasgow while she was walking across Fitzhugh Street where it intersects with San Jacinto Street. He had started to work for Floors, Inc. of Texas about February 23, 1960; that his job with Floors, Inc. of Texas was that of supervisor over a clean-up crew doing janitorial service at Texas Instruments, Inc. plant; that he never performed any other work for Floors, Inc. except at the plant of Texas Instru-

ments, Inc; that he had approximately 53 people working under him; that his hours of employment were from 10 o'clock at night until 6:30 o'clock in the morning; that Mr. Harry Goff, Vice-President of Floors, Inc. was his boss. Floors, Inc. had another location on Lemmon Avenue where one porter worked and occasionally he would, when going home from work, drive by the Lemmon Avenue place to see that the porter was on the job and was doing his work all right. When asked concerning his specific duties at the Texas Instruments plant he testified:

"Q He was under you, too then?

"A He was under me, too. And when we had the Material Building, also out at Texas Instruments out on Central, and I had, say, we were half a mile from the main plant, and then we had some farm houses which was out from the plant about half a mile. Each one of them was in different directions all of the way around the plant, out in the field there.

"Q Did all of those get cleaned at night?

"A Yes, sir, all of those got cleaned at night. It was my job to see that those got cleaned, and I had to drive from one building to the other building to check on my porters and maids.

"Q And you needed the car?

"A Yes, sir.

"Q To do that?

"A Yes, sir.

"Q Did Floors, Inc. offer to furnish you with a car to do that or were you supposed to furnish your own car to do that?

"A I furnished my own car, but they was going to start paying me six cents a mile for the use of my car while I was on duty.

"Q Did they give you a written agreement about that?

"A No. It was just something that was going to come up, which never did. It never did come up. I mean it was just talk about it.

"Q But part of which you were paid for was use of your car?

"A I wasn't paid for the use of my car."

He testified that his contract of employment with Floors, Inc. of Texas was entirely verbal, being consummated by Mr. Harry Goff and Mr. Kelly Smith. His wages at the beginning was $85 per week and he got a $5 raise to $90 per week. He further testified that after he got off from work and went home that he would never do anything connected with the company business from that time until he went back to work again. He was not subject to call and did not even have a telephone at home. Following the accident in March of 1960 he had his driver's license suspended in April. He continued to work for Floors, Inc. until about August 15 during which time he drove to work with fellow employees and that if he needed a car at the place of business he would borrow somebody else's car. Further concerning the use of his car he testified:

"Q Now, at no time was it ever suggested to you that you would be paid for your transportation—

"A No.

"Q —from your home to your place of business, was it?

"A No.

"Q And that was exactly where you were going at the time this accident occurred, was it not?

"A Yes, I was going to work.

"Q And neither anyone from Floors, Inc. or Texas Instruments ever told you how you were to get to work?

"A No.

"Q That is, whether you were to go by car or bus, walk?

"A That is right.

"Q Taxicab?

"A Bicycle or otherwise.

"Q Any way you wanted to go was your business?

"A That is right.

"Q And no one ever told you which way to go?

"A That is right.

"Q And you weren't paid anything by anyone for the time you spent in going to work?

"A. No."

Mr. Harry Goff testified that at the time of the accident Stegall was an employee of Floors, Inc. of Texas as a supervisor, working at the Texas Instruments, Inc. plant near Richardson where he supervised some 53 employees in their duties of cleaning certain parts of the Texas Instruments, Inc. plant. He employed Stegall, such contract being verbal, and his hours of employment were from 10 o'clock at night until 6:30 o'clock in the morning. His compensation was to be $85 per week and there was to be no compensation over and above this amount for overtime or time and half. He said that Stegall's duties at the Texas Instruments, Inc. plant covered an area containing several buildings, the furthest one from the main plant being about half mile. Concerning use of an automobile Mr. Goff testified:

"Q What was said at the time he was employed about his need for an automobile in performing his duties?

"A There was nothing said about an automobile.

"Q Was he asked if he had one?

"A I think I asked him if he had a car.

"Q As a matter of fact didn't he need a car to get around from one building to another out there?

"A Well, there was no transportation out to Texas Instruments and he had to get out there and back.

"Q Yes, but, I mean, to get around while he was on the job there at night?

"A There was nothing discussed about that.

"Q He has testified that he needed the car, his car, to get from one place to another out there.

"A I never discussed it with him whether he needed the car or not. He could have walked."

With reference to Stegall going by the Texas Instruments plant on Lemmon Avenue, Mr. Goff testified he, to his knowledge, never sent Stegall by there, did not know anything about this being a part of Stegall's duties.

Further concerning use of an automobile Mr. Goff testified:

"Q Now, Mr. Stegall's testimony is that from time to time Mr. Warren (an employee of Texas Instruments) would ask him to go from one of those buildings to another to inspect, and to show him what was needed and should be done in other buildings on that location.

"A Mr. Warren might have asked him to go around with him.

"Q Was that part of his duties to go with Mr. Warren when Mr. Warren asked him to?

"A I don't know whether it was part of his duties or not, but you might say it was common courtesy. We have to get along with our customers.

"Q Well, if he hadn't been courteous to this extent to Mr. Warren he wouldn't have stayed with your Company very long, would he?

"A I don't guess so.

"Q Was Mr. Stegall paid any extra compensation for his use of his car on the job?

"A No.

"Q Was payment for such use of his car ever the subject of discussion, so far as you know?

"A I think one time, yes. He asked me for some gas money.

"Q But, you didn't pay it?

"A I don't recall ever paying him anything, no sir.

"Q Now, then. Do you know whether you did or not?

"A Let's see. I don't believe I paid him any money."

Two other supervisors for Floors, Inc. of Texas, who also work at Texas Instruments, Inc. plant, use their own private automobiles in getting around from one building to another on the job, but they, like Stegall, got no extra compensation for such use of their cars.

Stegall continued to work for Floors, Inc. for several months after the accident without using his automobile. He was finally laid off due to lack of work.

Appellant candidly concedes that there is no evidence of an express agreement between Stegall and his employer requiring Stegall to use his automobile in his employment. Appellant argues that the testimony referred to raises the issue of an implied understanding or agreement between Stegall and his employer concerning the necessity of his using an automobile on his job. 10–A Tex.Jur. § 6, p. 17. To sustain her position, appellant relies principally on the case of Maryland Casualty Co. v. Smith (Tex.Civ.App.), 40 S.W.2d 913 (no writ history) which was a workmen's compensation case wherein the employee was injured while riding a motorcycle on his way to work. In that case the court pointed ed out that under his contract of employ-

ment the employee was required to furnish a motorcycle to be used by him in the performance of his duty, viz., the delivering of packages and parcels for his employer; that said motorcycle was one of the instrumentalities of the employee's employment; that said employer did not furnish the place for the storage of the said motorcycle when not in use; that the employee at all times had to care for same so as to have it available for the performance of his duties. The court there said that by giving the Workmen's Compensation Act a liberal construction that the facts brought the employee within such act.

The Smith case was one of the earlier "going to and returning from work" cases and while the Supreme Court in Superior Ins. Co. v. Jackson, 156 Tex. 61, 291 S.W.2d 689, 691, said that it did not disagree with the decision in the Smith case, it did proceed to distinguish it. In an earlier case, United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210 (opinion adopted by the Supreme Court). Judge Hickman, later Chief Justice of the Supreme Court, in denying recovery for injuries sustained by an employee on the public streets while returning home from his work said that no rule of the Workmen's Compensation Law is more clearly established than that an employee is not to be regarded as being within the scope of his employment while going and returning from his work over and along the public streets. Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Sullivan v. Maryland Casualty Company (Tex.Civ.App.) 82 S.W.2d 1089 (err. ref'd.). Judge Hickman then said:

"The opinion of the Court of Civil Appeals cites and apparently bases its decision of this question upon Maryland Casualty Co. v. Smith, Tex.Civ. App., 40 S.W.2d 913. No application for writ of error was filed in that case and it appears to be out of harmony with the many decisions by this court."

While it is thus observed that the opinion in the Smith case, relied upon by appellant, has been materially weakened and its authority questioned, yet, even so, the facts of the case at bar make it clearly distinguishable from the Smith case. As pointed out in the Smith case the motorcycle of the employee was an integral part of the contract of employment which is not the case before us here. We therefore conclude that the Smith case is not determinative of the instant appeal.

While this is not a workmen's compensation case, it is of interest, since appellant has relied upon a workmen's compensation case, to note the recent trend of "going to and returning from work" compensation cases as evidenced by the opinion of Chief Justice Calvert in American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370.

■ We are dealing here with the common law tort action. Under the common law it must be made to appear that the servant committed the wrongful act in the course of his employment for his employer, or that the act must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant was employed. 29 Tex.Jur. § 242, pp. 412–414; International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039; Acme Laundry Co. v. Weinstein, Tex. Civ.App., 182 S.W. 408. Whether the relation of master and servant, as fixing liability on one person for the acts of another under the doctrine of respondeat superior, exists in a particular case depends on the facts and circumstances of each case. 57 C.J.S. Master and Servant § 563, p. 275. In applying this test to the facts in the case under consideration we deem it necessary to consider the entire record and not isolated portions thereof. When this is done we conclude that the use of Stegall's automobile was not a necessary part of his contract of employment with Floors, Inc. of Texas. The testimony of Goff and Stegall established the fact that it was a convenience for Stegall to have an automobile with him both in driving to and from the company's place of business at the Texas Instruments plant and also to use as a convenience in going from one part of the plant in his business of supervising other employees. There is no evidence, express or implied, of an obligation on the part of Stegall to use his automobile in his work. The testimony is positive that the employer was not concerned in any manner as to how Stegall got to and from his place of business or how he transported himself within the place where the work was done. There is no evidence that his compensation included anything for the use of his automobile. To further demonstrate the lack of necessity for the use of his automobile as a part of his work is the testimony that, after the accident in question, he continued his services with his employer without the use of an automobile for several months until he was laid off due to lack of work.

The record conclusively demonstrates an absence of an issue of fact as to the crucial question of course of employment. Any possible evidence tending to create an inference of implied contract for the use of the automobile is nothing more than a suspicion or surmise and therefore only a scintilla of evidence insufficient to create an issue. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

Appellant concedes the rule to be that an employee is not considered in the course of his employment when driving his own car to and from his place of work. American National Ins. Co. v. O'Neal, Tex.Civ.App., 107 S.W.2d 927; Norvell Service Co. v. Spell, Tex.Civ.App., 288 S.W.2d 133; Fountain v. Walker, Tex.Civ.App., 260 S. W.2d 717; Antilley v. Jennings, Tex.Civ. App., 183 S.W.2d 982; Lofland v. Jackson, Tex.Civ.App., 237 S.W.2d 785; Kennedy v. American Nat. Ins. Co., 130 Tex. 155, 107 S.W.2d 364, 111 A.L.R. 916; Barr v. Colorado Interstate Gas Co., 5 Cir., 217 F.2d 85, 52 A.L.R.2d 282.

■ Furthermore, the record is entirely devoid of evidence relative to right of con-

trol of the servant by the master. As correctly contended by appellee, where liability is sought to be placed on master for negligent act of the servant the test of liability of the master is whether the master had the right and power to direct and control the servant in the performance of the causal act or omission at the very instant of the occurrence of such act or neglect. The identical situation was decided by the court in Lofland v. Jackson, (Tex.Civ. App.) 237 S.W.2d 785 wherein the court held that the issue of courses of employment was not raised when the testimony failed to demonstrate a right of control by the employer to direct the movements of the employee at the time of the commission of the alleged negligent act. See also American National Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409; Southwest Dairy Products Co. v. Defrates, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854.

Appellant's points are overruled and the judgment of the trial court is, in all things, affirmed.