**Mrs. Rae Jean PARMLEE et al., Appellants,**

v.

**TEXAS & NEW ORLEANS RAILROAD COMPANY, Appellee.**

No. 51.

Court of Civil Appeals of Texas.

Tyler.

July 9, 1964.

Rehearing Denied July 23, 1964.

W. James Kronzer, Hill, Brown, Kronzer, Abraham, Watkins, Steely, Jerry V. Walker, Fulbright, Crooker, Freeman, Bates & Jaworski, John A. Embry, Jr., Lockett, Embry & Sharp, Houston, for appellants.

John F. Heard, Baker, Botts, Shepherd & Coates, Houston, for appellee.

DUNAGAN, Chief Justice.

This is a case instituted under the terms and provisions of the Texas Wrongful

Death Act, being Article 4671 Vernon's Ann.Rev.Civ.St., arising out of the death of Glendon Cherry Parmlee, Jr., who was fatally injured in a vehicular collision occurring about five miles north of the town of San Manuel in Hidalgo County, Texas, on U. S. Highway No. 281 on June 10, 1952. At the time of the fatal accident Glendon Cherry Parmlee, Jr., was operating his vehicle in the scope and course of his employment for A. P. Gary Company. Death compensation benefits were paid to the other appellants by intervenor, Royal Indemnity Company.

The other vehicle involved in the collision was owned and operated by William W. Farmer, Jr., a railroad engineer in the employ of Texas & New Orleans Railroad Company, who was at the time of the collision proceeding to report to a new temporary job assignment in McAllen, Texas. Appellants sought recovery against the appellee, Texas & New Orleans Railroad Company, on the theory of respondeat superior.

Appellee, Texas & New Orleans Railroad Company, moved for summary judgment on the grounds that at the time of the fatal accident Farmer was not as a matter of law engaged in the course and scope of his employment. No contention is made or raised with respect to any other features of the controversy. Following a hearing on said motion for summary judgment the Trial Court, pursuant to Rule 166–A, Texas Rules of Civil Procedure, concluded there was no genuine issue of fact as to whether Farmer was in the course and scope of his employment for appellee at the time of the tragedy, and a take-nothing judgment was entered against all appellants. From this action appellants duly perfected their appeal to the Court of Civil Appeals for the First Supreme Judicial District of Texas, and the cause was ordered transferred to this court on an equalization of the dockets.

Since this is a summary judgment action under Rule 166–A T.R.C.P., we are governed by well-established rules announced by our Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. A defendant moving for a summary judgment must assume the negative burden of showing, as a matter of law, that the plaintiff has no cause of action against him. Neigut v. McFadden (Tex.Civ.App.), 257 S.W.2d 864; Achterberg v. Gillett (Tex. Civ.App.), 322 S.W.2d 306 (writ ref. n. r. e.); Statham v. City of Tyler (Tex.Civ. App.), 257 S.W.2d 742 (writ ref. n. r. e.); Seale v. Muse (Tex.Civ.App.), 352 S.W.2d 534.

The sole question presented on this appeal is whether the appellants, sustained their burden under Rule 166–A T.R.C.P., by demonstrating, through the medium of the pleadings and evidence in support of said motion, that Farmer was not acting within the course and scope of his employment for the appellee, Texas & New Orleans Railroad Company, at the time of the collision with an automobile driven by Glendon Cherry Parmlee, Jr. To arrive at an answer to this question, we have carefully examined the pleadings and supporting evidence. The record consists of the appellants' original petition, defendant's original answer, Intervention of Appellant, Royal Indemnity Company, Plaintiffs' Request for Admission of Facts, Defendant's Answer to Such Request for Admission of Facts, Appellee's Motion for Summary Judgment and Appellants' Reply to Appellee's Motion for Summary Judgment. The record contains the following evidence: Deposition of E. S. Lohrke, Deposition of W. H. Higgins, Deposition of Hazel Martha Farmer, widow of William Walter Farmer, and Agreement between Texas & New Orleans Railroad Company and the Brotherhood of Locomotive Engineers, governing rates of pay and working conditions for engineers which were in effect at the time of the collision, the subject of this lawsuit.

Mr. Lohrke was the Assistant Manager of Personnel for the railroad and resided in Houston. He handled labor agreements and contracts. At the time of the accident

he was employed in the capacity of a locomotive engineer.

In 1952 he was the local chairman for the Brotherhood of Locomotive Engineers in San Antonio. He represented 160 men in dealing with contract matters with the railroad. He acquired familiarity with the methods of bidding on jobs or the assigning of work on jobs.

The effect of Mr. Lohrke's testimony was that Mr. Farmer, in traveling to McAllen to report to the job to which he was assigned, could use any form of public transportation, or any other form of transportation including his own private automobile and, if ordered by the company to deadhead, he would use company transportation; that Farmer was not deadheading on this occasion. When a man bids on an assignment or is forced upon an assignment, it is up to him normally to travel in his own fashion as he chooses and at his own expense and normally that is true after all assignments and he did so in reporting to this assignment at McAllen.

Mr. Lohrke gave the following testimony:

"Q. You say he could use any form of public transportation or his own car. If he did so and if he was voluntarily going, would he receive any form of reimbursement from the railroad for that, during that period of time?

"A. No, sir.

"Q. All right. But suppose he was one of these men that were forced to go; suppose he was the low man on the totem pole, so to speak, and given instructions to go, what would be the situation there? Would he get any reimbursement if a passenger train were not available? Or would he get any form of reimbursement for his expense?

"A. No, sir.

"Q. In no case would he get any reimbursement at all, mileage, or payment for his transportation?'

"A. No, sir, not unless he was ordered to deadhead at the instance of the company; and he would then be instructed as to turn in a bill for the car expense."

Mr. Lohrke further testified that most men used their private automobiles for their own convenience.

Mr. Higgins, who was division superintendent for appellee at the time of this accident (who retired in 1954), testified in substance that Farmer was not paid any form of compensation for the time utilized in traveling from San Antonio to McAllen and that the time did not start until he went on actual performance of duty at McAllen which destination he did not reach due to the collision. That he (Farmer) would receive no form of compensation until he arrived and reported at McAllen; that Farmer in traveling from San Antonio to McAllen was not deadheading. He further testified that when one was given an assignment such as Farmers that they usually would go by automobile to the place he was assigned and would not be entitled to any form of reimbursement of the expenses incurred in the use of the automobile. He did not know whether Farmer would go in his private car or ride with someone else.

Mrs. Farmer testified in part as follows:

"Q. Had your husband ever had occasion to go off on assignments to other cities, other than San Antonio, before?

"A. Yes.

"Q. Had he on those occasions used his own car?

"A. Yes.

"Q. Did he occasionally use trains?

"A. Yes.

"Q. What circumstances would bring about his use of his car?

"A. Well, when the job was over he could get home sooner by not having to wait and take a train. That is why he would take the car.

"* * *

"Q. Do you know whether or not the railroad knew he would use his car in going to jobs they would assign him?

"A. No. I don't know whether they did, or not.

"Q. Do you know whether or not he was compensated in any fashion for his car? ·

"A. I don't know. Really and truly I don't.

"Q. You don't know whether he would be entitled to some allowance for the use of his car, or not, under certain circumstances.

"A. No.

"* * *

"Q. And as to whether or not he could have taken the train, or not, you don't know?

"A. I am sure there would have been been some way for him to get there besides taking the car.

"Q. By bus?

"A. Yes.

"* * *

"Q. Based on previous conversations you may have engaged in with your husband, did you have an idea some money or some form of compensation of some kind was paid when he used his car?

"A. No. He just made the money and we didn't talk too much about it.

"* * *

"Q. And he was what was called a demoted engineer?

"A. Yes."

Upon cross examination by Mr. Heard she testified as follows:

"* * *

"Q. Do you recall having a discussion after he decided to go on down and him talking to you about whether you could do without the car?

"A. Yes. He asked me several times if I was sure because we lived out of town a little ways and it would be a little inconvenient to be without the car. ‚

"Q. Do you recall him saying he wanted to take the car to avoid losing a couple of days enroute by going some other way?

"A. Well, no. The real reason he said he would like to take the car was so when he was through down there he wouldn't have to wait on a way to get back. He could come on home.

"Q. At times, I suppose, he got to some of the assignments by bus?

"A. I think mostly on the train."

The record is entirely devoid of evidence relative to the right of control of the servant by the master.

■ The law is well established in this state that the test of a master's liability for negligent acts of his servant is whether the master had the right and power to direct and control the servant in performance of the causal act or omission at very instant of the occurrence of such act or neglect. American National Insurance Company v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A. L.R. 409; Glasgow v. Floors, Inc., of Texas (Tex.Civ.App.), 356 S.W.2d 699 (no writ history); Kennedy v. American Na-

tional Insurance Company, 130 Tex. 155, 107 S.W.2d 364, 111 A.L.R. 916; Antilley v. Jennings (Tex.Civ.App.), 183 S.W.2d 982 (n. r. e.); Fountain v. Walker (Tex.Civ. App.), 260 S.W.2d 717 (n. r. e.).

The basic concept which underlies the rule of respondeat superior in Texas is in the necessity for the right and power on the part of the master to direct the servant in the performance of the causal act or omission at the time of the occurrence of such act or neglect. Under the principle of respondeat superior, unless the act of the servant is committed within the scope of the general authority of the servant in furtherance of the master's business and for the accomplishment of the object for which the servant is employed, the master cannot be held liable for the servant's act. Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057; McGregor Milling & Grain Co. v. Russo (Tex.Civ.App.), 243 S.W.2d 852 (ref. N. R.E.); Hudiburgh v. Palvic (Tex.Civ. App.), 274 S.W.2d 94 (ref. N.R.E.). The servant must be acting within the course and scope of his employment and in the furtherance of his master's business. In this case, in order to determine whether these indispensable elements exist and thus fix liability against the master, we must look to the right of control of the master in the use of the automobile and whether its use was in the furtherance of the master's business. Did the master have the right and power to control the conduct of Farmer on the day in question? The complete absence of this power in this case is brought home by consideration of the agreement between the railroad and the Brotherhood of Locomotive Engineers. This agreement covered in minute detail the rates of pay and working conditions for engineers. It is particularly significant that this carefully worded agreement which in effect governs the day in and the day out life of railroad engineers in their employment makes no reference whatsoever to the use of private automobiles and in no way, shape or form gives the railroad company any control over the mode of transportation used in off hours. It is further significant to note that Article 15 of the agreement which refers to "deadhead time" contains no reference to the use of private automobiles, to any right on the part of the railroad company to prescribe or prohibit the use of private automobile or any right to control the manner in which an employee might operate a private automobile.

The Supreme Court of Texas, in the case of Kennedy v. American National Insurance Company, supra, said, " * * * The employer is not liable where the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation."

In the case of American National Insurance Company v. Denke, supra, the Supreme Court of Texas said, "We are brought, therefore, to the precise inquiry as to whether or not in this instance Saunders, in his capacity as agent, also occupied the further capacity of servant of the insurance company in the matter of operation of the automobile. It is settled that 'the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the causal act or omission at the very instant of the act or neglect.' Putting the matter in a different way, it may be said that a master is liable for acts of his agent under the doctrine of respondeat superior only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises. Trachtenberg v. Castillo (Tex.Civ.App.) 257 S.W. 657; Leachman v. Belknap Hardware & Mfg. Co., 260 Ky. 123, 84 S.W. (2d) 46; Standard Oil Company v. Parkinson (C. C.A. [8]) 152 F. 681, and authorities cited in those cases. The Supreme Court of Tennessee has in several cases reiterated the language of Judge Lurton as follows: 'In every case, the decisive question is, had the defendant the right to control in the given particular, the conduct of the person doing the wrong.' See Income Life Insurance Co.

v. Mitchell, 168 Tenn. 471, 79 S.W. (2d) 572, 574."

In the case of Lofland v. Jackson, 237 S.W.2d 785, Tex.Civ.App., 1951 (writ refused, n. r. e.), the court said:

"* * * Since the evidence conclusively shows that Jackson was using his own automobile for his own personal convenience on his way to work and not engaged in the business of his employer at the time and place of the collision in question and that Jackson was not being directed by the agents of his employer or not even subject to their direction, we think that the Commission of Appeals with the approval of the Supreme Court announced the rule governing such a matter in the one opinion handed down in two cases reported together, American Nat. Ins. Co. v. Denke and the same company v. Shepherd, 128 Tex. 229, 95 S.W.2d 370, 373, 107 A.L.R. 409 * * *."

In the case Antilley v. Jennings, supra, the court stated:

"* * * 'In this case we have the simple question of a man (Calvary) driving his own car on a public highway, going from Abilene to Camp Barkeley, Texas, * * * where he was to report for work, and while on the road and before he had started to work, and in his own car, he was involved in a collision with another car, and the party who was riding with him was killed and Mrs. Antilley was killed and Billy M. Antilley was injured * * *'—hence, no liability on the part of defendants.

"* * * A consideration thereof leads us to the conclusion that the following fact issues are established by the undisputed testimony: The employers (defendants) were in no way concerned or interested in the mode of transportation or the route by which Calvary (or Allen) reached the place where he was to perform labor for them. A paved public highway and 'other roads' ran from Abilene to and by Camp Barkeley, and Calvary, as well as Allen, was free to take transportation to point of labor by bus, individual car, or other means. The Jennings in no way undertook to furnish transportation for Calvary and Allen, or either of them. Calvary, as well as Allen, was left free to select his own method of transportation from his residence to his work and the return therefrom. * * * The collision, or alleged tortious injury is not shown to have occurred in the immediate performance of work for the Jennings, but on the public highway leading to the place where work was to be done for them. There is no evidence that said employers expressly or impliedly exercised at any time any character of control over the use or operation of Calvary's car as a vehicle for going to said work or returning therefrom. The evidence is definitely to the contrary. Obviously the collision occurred on the public road and before Calvary had begun his day's work. * * *"

Under the above undisputed facts and circumstances we are forced to the conclusion that at the time of the unfortunate accident and collision of the cars said Calvary was not in line of duty for his employers, or doing any work whatever for them, but was at such time driving his own car on a mission of his own.

In the case of American National Insurance Company v. Denke, supra, the Supreme Court said:

"In the case of Wesolowski v. John Hancock Mutual Life Insurance Company [308 Pa. 117, 162 A. 166, 87 A.L.R. 783], supra, Supreme Court of Pennsylvania, used this language:

"'In the case before us the defendant had no control over Adams' car. It was in no position to require him to use it, for the use of his car was no

part of his contract of service. It could not direct him when, where, or how to drive his car. It had no more control of Adams' car in which he transported himself than it had of the shoes he used in walking from patron to patron. The employer was indifferent as to whether Adams walked, rode a bicycle, or operated a motor car to reach the people with whom he transacted business. If Adams had chosen to walk from person to person with whom he had his employer's business to transact and in walking he had negligently knocked over and injured another pedestrian, it could not reasonably be contended that his employer should respond in damages for Adams' negligent pedestrianism. So to hold would be to construe the phrase "respondeat superior" beyond its fundamental meaning and to carry its principle to absurd lengths and to consequences forbidden by every sound consideration of public policy.' "

A case which is squarely in point is that of Spoonamore v. Louisville and Nashville Rd. Co., 179 F.Supp. 290 (U.S.D.C.) Ky., 1959. In that case the plaintiff, a locomotive engineer, placed with defendant railroad, his bid for the position of engineer which had been described in a bulletin. He was entitled to the position by his seniority and was en route by automobile to the location where he was to carry out his new assignment. The court held that the injured employee was not within the coverage of the act pointing out as follows:

"* * * It is clear from the evidence that in traveling the long distance from his place of residence to the place where he was to begin his duties of his employment, the plaintiff was free to choose the means of transportation as well as a route to be followed. Transportation by public bus was available, and his traveling with Mr. Davis was entirely a matter of his own voluntary choice for reasons personal to him. It was a matter over which the railroad exercised no direction or control.

"At the time of his injury neither the plaintiff nor Mr. Davis, the driver of the car, were functioning within the scope of their employment nor in the performance of any of their duties as employees of the defendant railroad. All that was required of them was to present themselves for work at the appointed time and place.

"In view of the above facts, it follows as a matter of law that at the time of his injury plaintiff was not within the coverage of the Act upon which he relies."

The vital element of expressed or implied authorization to use an automobile is completely absent from the case at hand. The railroad company had no right to direct Farmer to use or not to use his own private automobile. It had no right to tell him how to use his automobile if he chose to do so, what route to follow, when to depart or what facility to use. Even if the railroad company had undertaken to attempt to direct Farmer in this connection, it was his complete privilege, protected as he was by the agreement, to decline to follow such instruction and to proceed on his own. The vital element of control which has been the foundation of the rule of respondeat superior is completely lacking.

Since there is no evidence that the employer had a right to control the conduct of Farmer or the use of the automobile on the day in question, or that the employer did in fact exercise control over him in the particulars above stated, it follows that Farmer was not acting within the course and scope of his employment for his employer at the time of the accident. Hence no liability attached to the employer for the acts of Farmer. The appellee met its burden of demonstrating an absence of a fact issue on such matter, and accordingly the judgment of the trial court should be in all things affirmed and it is so ordered.